J-A11035-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| JACQUELINE PAGAN | |
| Appellant | No. 311 EDA 2015 |

Appeal from the Judgment of Sentence August 25, 2014
in the Court of Common Pleas of Philadelphia County Criminal Division
at No(s): CP-51-CR-0009876-2012

BEFORE: SHOGAN, MUNDY, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:                    **FILED JULY 12, 2016**

Appellant, Jacqueline Pagan, appeals from the judgment of sentence entered in the Philadelphia County Court of Common Pleas following her convictions for driving under the influence[1] ("DUI"), aggravated assault by a vehicle while DUI,[2] accidents involving death or personal injury,[3] simple assault,[4] recklessly endangering another person[5] ("REAP"), and possession

---

[*] Former Justice specially assigned to the Superior Court.

[1] 75 Pa.C.S. § 3802(d)(2).

[2] 75 Pa.C.S. § 3735.1.

[3] 75 Pa.C.S. § 3742(a).

[4] 18 Pa.C.S. § 2701(a).

[5] 18 Pa.C.S. § 2705.

of an instrument of crime[6] ("PIC"). Appellant argues the trial court erred by (1) refusing to suppress a statement she contends was made in violation of ***Miranda v. Arizona***, 384 U.S. 436 (1966), (2) admitting hearsay statements, and (3) concluding there was sufficient evidence to support her convictions for DUI, aggravated assault while DUI, accidents involving death or personal injury, and PIC. We affirm in part and vacate in part.

On February 17, 2012, Appellant was arrested for the above crimes following an automobile accident she was involved in on the 2900 block of Kensington Avenue in Philadelphia. On June 19, 2014, the trial court held a hearing on Appellant's motion to suppress her refusal to submit to chemical testing and a statement Appellant made to police. Counsel stated the grounds as follows:

> [Appellant] was under custody and she was interrogated by police officers and she was interrogated by police officers in making statement that she has taken sleeping medication. It is also my contention there was not reasonable suspicion or probable cause for having her to undergo blood test, thereby . . . suppressing the refusal.

N.T., 6/19/14, at 14-15.

Officer Jennifer Welch testified that she and her partner, Officer Carlos Cortez, were at a traffic light at Kensington Avenue when they were approached by several males and Appellant. ***Id.*** at 19. The males informed the officers that Appellant had been involved in an accident, she hit another

---

[6] 18 Pa.C.S. § 907(a).

- 2 -

female with her vehicle, and that she left the scene of the accident on foot. *Id.* at 19-20. Appellant was approximately one block from the scene when she encountered police. The Commonwealth inquired about Officer Welch's interaction with Appellant:

Q. When you initially interacted with [Appellant], what if anything did [Appellant] tell you?

A. I had asked [Appellant] what had happened. She said she was involved in an auto accident. And injury, I asked if she was injured and there was nothing, no about that. And then from that point I said, 'Well, we are going to have to return to the location of the auto accident.'

Q. And what, if anything, happened at that point, Officer Welch?

A. Well, I had put her in the back of my wagon and without handcuffs, went back to the location of the auto accident, 2900 block of Kensington Avenue. Upon arrival there I had asked her for information to the vehicle and her driver's license. . . .

The Court: She was in handcuffs?

A. She was not in handcuffs; no, sir. So she gave me her driver's license and went to her vehicle and retrieved her insurance and registration and all that stuff.

\*   \*   \*

[The Commonwealth]: Did [Appellant] make any statement to you?

A. I had asked . . . [Appellant] rather if she had any medical conditions that may have caused the accident. I had asked her if she was on any type of medication and she states that she was, she takes prescribed sleeping pills.

- 3 -

Q. And at the point in time you are asking her these questions, what is the purpose of you asking these questions, Officer Welch?

A. Well, the severity of this auto accident. She said she was on sleeping pills or had taken sleeping pill or prescribed sleeping pills, so that is reason enough to suggest that perhaps she had some in her system.

Q. After she made that statement to you, what if anything did you do?

A. Placed her under arrest, placed handcuffs on her, and placed her in the back of our wagon.

Q. Now at the point in time you are transporting [Appellant] back to the scene of [the] accident, what if anything are you and your partner trying to do once you responded to the accident?

A. We observed the scene itself. Observed the vehicle in the positions that they were [sic]. Her vehicle, the damage to her vehicle, blood on the ground, and trying to determine what, if anything, she had any medical problems that may have caused her to crash.

Q. At the point in time as you are trying to make all those determinations was [Appellant] under arrest before she made that statement to you?

A. No, no.

Q. And at the point in time that you responded to the accident scene, had you personally observed the accident take place, Officer Welch?

A. I observed the scene and the after effects but not the actual accident, no.

Q. When you arrived on location, were you and your partner trying to gather information as to what occurred?

A. Yes, ma'am.

Q. Now, Officer Welch, other than [Appellant's] statement to you that she had taken prescribed sleeping medication, did you make any observations of [Appellant] that led to you ultimately placing her under arrest for DUI?

A. For the exception of me having to ask her several times to get me her information from her vehicle, she was very slow moving. Most people would be like, 'Oh, let me get it.' And she, you know, I had to repeat myself, have her focus more so on what I was saying.

Q. And was this from the time you had the initial interaction with her at Kensington and Orleans?

A. She was slow, but once she focused, she got the idea of what I was requesting.

*Id.* at 20-23.

On cross-examination, Officer Welch clarified that when she arrived at the scene of the accident with Appellant, Appellant was not handcuffed and was permitted to exit the police vehicle in order to retrieve her paperwork from her vehicle. *Id.* at 32.

Following argument, the trial court denied Appellant's motion to suppress, and the case proceeded immediately to a bench trial. Alberta Murphy testified that she was on her way to meet her daughter at a restaurant on Kensington Avenue at approximately 10:45 a.m. on the morning of February 17, 2011, when she was struck by a vehicle. *Id.* at 47. She described the accident: "I was walking in the bike lane. I see a white car coming up, hit two other cars, and I didn't get out of the way fast enough, and that's all." *Id.* As a result of the accident, she had surgery on her arm and leg, was bedridden for the first six months following the

- 5 -

accident, and spent the next six months "learn[ing] how to rewalk [sic] again." *Id.* at 50.

Tina Murphy witnessed the accident and testified as follows on direct-examination.

> Q. And when you were going to meet your mom, did anything unusual happen that brings you to court today?
>
> A. When I got out of the car, I heard a real loud bang. And then as I get out of the truck, I saw my mom getting hit. I saw my mom get hit into a green tow truck and she flipped up in the air and her shoe came off.
>
> Q. Now, when you saw your mom get hit, did she get hit by a car?
>
> A. She got hit by a car.
>
> Q. Do you know what that car looked like, Tina?
>
> A. It was a white car.
>
> &ast; &ast; &ast;
>
> Q. Now, Tina when you saw the white car there, did you have an opportunity to take any pictures of that car?
>
> A. I took pictures more of when, I took one picture when I was by my mom when I was over there because the car started backing up so I took a picture.
>
> Q. Now I'm going to stop you right there. When you said the car started backing up, what do you mean?
>
> A. The car started backing up and people started banging, banging on the car and that is when I took a picture. And when the ambulance came, I took a picture of the front part of the car.
>
> &ast; &ast; &ast;

Q. Well, first of all, were there any other people that were out on the block that you know?

A. When it first happened, there was only a couple. But then all of a sudden there was, God sent a whole bunch of people right there to stop. It is just a whole bunch of people came out of nowhere.

*Id.* at 56-59. She further testified that the day of the accident "was a really sunny day" and she took a picture in case the driver fled because she noticed the taillights were blinking and the car was backing up. *Id.* at 62.

During Tina Murphy's direct examination, the Commonwealth played a video of the scene following the accident. *Id.* at 65. Appellant objected to the admission of the audio from the video on the grounds that a statement heard on the video is inadmissible hearsay and violative of the confrontation clause. *Id.* at 70. The trial court summarized the contested statement on the record: "What I am hearing is screaming and [someone] saying in a loud voice 'She is trying to back out.'" *Id.* at 71; *see* Commonwealth's Ex. 3. The Commonwealth argued that because the victim of the accident, Alberta Murphy, was still visibly on the ground in the footage, the temporal lapse between the accident and the utterance could not have exceeded fifteen minutes. N.T. at 72-74. The trial court specifically noted, "his tone of voice seemed pretty excited." *Id.* at 74. Appellant then observed, "[b]ut he could

be pretty excited about seeing the blood."[7]  *Id.*  The trial court admitted the statement pursuant to the excited utterance hearsay exception.  *Id.* at 74.

The Commonwealth recalled Officer Welch, and she testified that when the males first approached her vehicle, they were screaming and moving their hands.  *Id.* at 81.  Officer Welch was approximately one block away from the scene of the accident at the time.  *Id.*  Appellant objected to the statements as hearsay, and following argument, the trial court permitted the testimony.  Officer Welch summarized the statements of the males: "the [Appellant] just hit a woman with her car.  She just left the scene or left the accident.  And we are walking with her to stop her from leaving[.]"  *Id.* at 85.

Officer Cortez testified that Appellant refused to submit to chemical testing of her breath and blood, and the parties stipulated that Appellant was appropriately advised of her rights regarding chemical testing and signed the chemical testing form.  *Id.* at 104, 117; *see* Commonwealth's Ex. 8 ("Warnings to be given by police").

The Commonwealth also admitted a surveillance video that captured the accident; the parties stipulated that if shown in its entirety, the video would not show Appellant running away from the scene or backing up her

_____

[7] A review of Commonwealth's Exhibit 3 indeed shows the victim on the ground with blood visible and aid being rendered; an ambulance is visible in the background.  Commonwealth's Ex. 3.  Further, the person who indicated Appellant tried to back out is heard exclaiming, "this car was in the air." *Id.*

vehicle.[8] *Id.* at 118. The trial court found Appellant guilty of the above crimes.[9]

On August 25, 2014, the trial court sentenced Appellant to an aggregate sentence of eleven and one-half to twenty-three months' incarceration, followed by seven years' probation.[10] Appellant's timely post-sentence motion was denied by operation of law on January 12, 2015. Trial Ct. Order, 1/12/15; *accord* Pa.R.Crim.P. 720(B)(3). On January 21, 2015, Appellant filed a timely notice of appeal. Appellant filed a Pa.R.A.P 1925(b) statement, and the trial court authored a responsive opinion.

On appeal, Appellant raises the following issues for our consideration.

> 1. Did not the [trial] court err by refusing to suppress the incriminating statement of [A]ppellant and evidence of her refusal to submit to chemical testing because the statement was taken in violation of **Miranda** where

---

[8] The video is not contained in the certified record. However, we note, the Commonwealth posits that the stipulation is "misleading because the video does not show [Appellant's] car at all after it hits the victim, as there is a post blocking the view." Commonwealth's Brief at 25 n. 4.

[9] The trial court acquitted Appellant of aggravated assault, 18 Pa.C.S. § 2702.

[10] Specifically, the trial court imposed eleven and one-half to twenty-three months' incarceration for the aggravated assault while DUI count, and 72 hours to six months' imprisonment on DUI. Sentencing Order, 8/25/14; N.T., 8/25/14, at 41. On accidents involving death or personal injury and PIC, the trial court sentenced Appellant to seven years' probation and five years' probation, respectively, to be served consecutive to the prison sentence but concurrent to each probationary sentence. Sentencing Order, 8/25/14; N.T., 8/25/14, at 41-42. No further penalty was imposed on the REAP count. Sentencing Order, 8/25/14.

[A]ppellant had been placed in police custody prior to being questioned and without being advised of her *Miranda* rights, and because the refusal was fruit of the poisonous tree?

2. Did not the [trial] court err by admitting hearsay statements from unidentified, out-of-court declarants regarding [A]ppellant's alleged attempts to leave the scene of the accident where the statements did not meet the admissibility requirements for excited utterances?

3. Was not there insufficient evidence as a matter of law to convict [A]ppellant of [DUI] and aggravated assault while [DUI] where the Commonwealth failed to prove that [A]ppellant was under the influence of a controlled substance at the time she was driving or that the substance rendered her incapable of safely operating a motor vehicle?

4. Was not there insufficient evidence as a matter of law to convict [A]ppellant of accident involving death or personal injury where the evidence showed [A]ppellant substantially complied with her duty to stop and render aid?

5. Was not there insufficient evidence as a matter of law to convict [A]ppellant of [PIC] where the Commonwealth failed to prove that [A]ppellant intended to use the car criminally?

Appellant's Brief at 4-5.

Appellant first argues the trial court erred in denying her motion to suppress because she was subject to custodial interrogation at the time she made the statement about prescription sleeping pills without being advised of *Miranda* rights. *Id.* at 17-25. She further posits that her refusal to submit to chemical testing should have been suppressed because "she was

not arrested on suspicion of [DUI] until she made the incriminating statement regarding the sleeping pills." *Id.* at 25. We disagree.

The following principles guide our review:

> Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. The suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review. Moreover, appellate courts are limited to reviewing only the evidence presented at the suppression hearing when examining a ruling on a pre-trial motion to suppress.

*Commonwealth v. Mathis*, 125 A.3d 780, 783 (Pa. Super. 2015) (citations omitted), *appeal granted*, 134 A.3d 51 (Pa. 2016).

> Statements made during custodial interrogation are presumptively involuntary, unless the accused is first advised of her *Miranda* rights. Custodial interrogation is questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of [her] freedom of action in any significant way. [T]he *Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. Thus, [i]interrogation occurs where the police should know that their words or actions are reasonably likely to elicit an incriminating response from the suspect. [I]n evaluating whether *Miranda* warnings were necessary, a court must consider the totality of the circumstances. In conducting the inquiry, we must also keep in mind that not every statement made by an individual during a police encounter amounts to an

- 11 -

interrogation. Volunteered or spontaneous utterances by an individual are admissible even without ***Miranda*** warnings.

> Whether a person is in custody for ***Miranda*** purposes depends on whether the person is physically denied of [her] freedom of action in any significant way or is placed in a situation in which [she] reasonably believes that [her] freedom of action or movement is restricted by the interrogation. Moreover, the test for custodial interrogation does not depend upon the subjective intent of the law enforcement office interrogator. Rather, the test focuses on whether the individual being interrogated reasonably believes [her] freedom of action is being restricted.
>
> \* \* \*
>
> Said another way, police detentions become custodial when, under the totality of the circumstances, the conditions and/or duration of the detention become so coercive as to constitute the functional equivalent of arrest.

Thus, the ultimate inquiry for determining whether an individual is in custody for ***Miranda*** purposes is whether there [was] a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest. Under the totality of the circumstances approach, the following factors are relevant to whether a detention has become so coercive as to constitute the equivalent of a formal arrest: the basis for the detention; its length; whether the suspect was transported against his or her will, how far, and why; whether restraints were used; whether the law enforcement officer showed, threatened, or used force; and the investigative methods employed to confirm or dispel suspicions.

**Additionally, motorists have certain statutory obligations to provide officers with information at an accident scene.** 75 Pa.C.S.A. §§ 3743 (relating to accidents involving damage to attended vehicle) and 3744 (referring to duty to give information and render aid).

- 12 -

**Thus, a motorist is not in custody for *Miranda* purposes when her freedom is restricted to the extent of her statutory obligation to remain at the scene and provide required information.**

In [***Commonwealth v.***] ***Gonazalez***[, 546 A.2d 26 (Pa. 1988)], police officers responded to the [scene] of a nearby accident. Upon arrival, the officers observed two heavily damaged vehicles. . . . [T]he officers approached Gonzalez's vehicle, which appeared to have minimal damage only to its front end. Initially, the officers asked Gonzalez if he w[as] hurt. Gonzalez responded that he was not injured. Then, the officers requested Gonzalez to step out of the vehicle. Gonzalez complied with the officers' request. The officers next asked Gonzalez, "what happened?" As Gonzalez relayed the information concerning the accident to the officers, they observed a strong odor of alcohol on his breath. The officers noticed that [Gonzalez's] eyes were watery and blood shot; that his conduct was stuporous and sleepy; and, he was unsteady and swaying. ***Id.*** at . . . 28. The officers also asked Gonzalez to provide them with his driver's license and registration; however, Gonzalez failed to produce either item.

The officers placed Gonzalez under arrest and transported him to the police station and then eventually to the Police Administration Building. At the Police Administration Building, the officers administered Gonzalez two breathalyzer tests, registering a reading of .082% and .087%, respectively. The officers then transported Gonzalez to the hospital, where he consented to a blood test. Tests on the blood sample revealed a .09% BAC.

The Commonwealth charged and tried for [DUI]. The trial court found Gonzalez guilty of DUI, and he appealed. This Court affirmed the DUI conviction. . . .

The Supreme Court considered Gonzalez's argument concerning admission of his statement made at the accident scene prior to ***Miranda*** warnings. The Court analyzed the totality of the circumstances in the ***Gonzalez*** case as follows:

- 13 -

Although [Gonzalez] had a duty under the Motor Vehicle Code to stay at the scene of the accident and identify himself and his vehicle, and exhibit his operator's license and proof of insurance, he was not under arrest, nor was he in custody. His freedom was restricted only to the extent of his statutory obligation to stay and provide the required information. When the police officers approached [Gonzalez] at the accident scene and asked him if he was hurt and what had happened, [Gonzalez] was not in custody, nor could he have reasonably believed he was in custody for purposes of ***Miranda***.

At that time, [Gonzalez] was not under arrest and he has not shown that he was subjected to retraints comparable to those associated with arrest. [Gonzalez] was asked a minimal number of questions at the scene of an accident on a public street. Those questions cannot be characterized as custodial interrogation. It follows that the statement made by [Gonzalez] in response to the police questioning was admissible evidence, and the trial court did not err in receiving it.

*Id.* at . . . 29-30.

***Commonwealth v. Williams***, 941 A.2d 14, 30-32 (Pa. Super 2008) (*en banc*) (quotation marks and some citations omitted and emphases added).

Considering the totality of the circumstances, we conclude Officer Welch did not subject Appellant to a custodial interrogation at the time she made the incriminating statement. ***See id.*** at 31. The uncontradicted evidence presented at the suppression hearing established that Officer Welch and Officer Cortez were approached by unidentified males on Kensington Avenue who indicated Appellant had just left the scene of an accident where she struck a person. N.T. at 20. Officer Welch asked Appellant what

happened, and Appellant indicated she was involved in an auto accident. *Id.*
Officer Welch informed Appellant they had to return to the accident scene
and put Appellant, without handcuffs, in the back of her police car. *Id.* at
20-21. At the scene, Officer Welch asked Appellant to produce her driver's
license and paperwork, and Appellant was permitted to leave the police
vehicle. *Id.* at 21. Officer Welch then asked Appellant if she had any
medical conditions that may have caused the accident and if she was on any
medication, to which Appellant replied that she takes prescription
medication. *Id.*

Appellant was under a statutory obligation to remain at the scene, and
we conclude the brief transport of Appellant by Officer Welch to comply with
that obligation did not rise to such level of coerciveness as to constitute the
functional equivalent of an arrest. *See Williams*, 941 A.2d at 31-32.
Moreover, the incriminating statement was made during Officer Welch's
attempt to "obtain general information concerning the accident," in "public
view at the accident scene," while Appellant was free of any physical
restraints. *See id.* at 33 (applying a totality of circumstances test and
concluding the defendant's questioning at the scene of a traffic accident did
not constitute custodial interrogation necessitating *Miranda* warnings).
Therefore, the trial court did not err in admitting the statement. *See
Mathis*, 125 A.3d at 783. Because of our conclusion, Appellant's argument

that her refusal to submit to chemical testing should have been suppressed, as fruit of the poisonous tree, must also fail.

Next, Appellant argues the trial court erred by admitting hearsay statements into evidence over defense counsel's objection.  Appellant's Brief at 26.  Specifically, Appellant argues the trial court erred in admitting the testimony of Officer Welch during the suppression hearing and during trial that unidentified males approached her yelling that Appellant had struck a woman with her car and left the scene.  **Id.** at 26-27.  Appellant also argues the admission of an audible statement within Commonwealth's Exhibit 3, a video recording made at the scene of the accident, was error.  **Id.** at 27.

We employ a well-settled standard of review over evidentiary challenges.

> The admission of evidence is solely within the province of the trial court, and a decision thereto will not be disturbed absent a showing of an abuse of discretion.  An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias[,] or ill-will discretion . . . is abused.

> \* \* \*

> As is well-settled, excited utterances fall under the common law concept of *res gestae.  Res gestae* statements, such as excited utterances, present sense impressions, and expressions of present bodily conditions are normally excepted out of the hearsay rule, because the reliability of such statements are established by the statement being made contemporaneous with a provoking event.  While the excited utterance exception has been codified as part of our rules of evidence since 1988, **see**

- 16 -

Pa.R.E. 803(2), the common law definition of an excited utterance remains applicable, and has been often cited by this Court:

> [A] spontaneous declaration by a person whose mind has been suddenly made subject to an overpowering emotion caused by some unexpected and shocking occurrence, which that person has just participated in our closely witnessed, and made in reference to some phase of that occurrence which he perceived, and this declaration must be made so near the occurrence both in time and place as to exclude the likelihood of its having emanated in whole or in part from his reflective faculties. . . . Thus, it must be shown first, that [the declarant] had witnessed an event sufficiently startling and so close in point of time as to render her reflective thought processes inoperable and, second, that her declarations were a spontaneous reaction to that starting event.

*Commonwealth v. Sherwood*, . . . 982 A.2d 483, 495-96 ([Pa.] 2009) . . . . The circumstances surrounding the statements may be sufficient to establish the existence of a sufficiently startling event. *See Commonwealth v. Counterman*, . . . 719 A.2d 284, 299 ([Pa.] 1988) (statement by children, who ultimately perished in a house fire, that their father was lighting a fire inside the house was admissible when, minutes later, the house became ablaze); *Commonwealth v. Sanford*, . . . 580 A.2d 784, 788 ([Pa.] 1990) (finding the excited utterance exception applicable where the testimony of the child's mother and physician circumstantially established the event evincing that the child perceived "some unexpected or shocking occurrence").

*Commonwealth v. Murray*, 83 A.3d 137, 155-56, 157-58 (Pa. 2013)

(quotation marks and some citations omitted).

We conclude the trial court did not abuse its discretion in admitting either statement[11] under the excited utterance exception to hearsay. **See id.** at 155-56. With regard to the statement made to Officer Welch, Officer Welch testified the males approached her one block away from the accident scene, waving their hands, gesturing, yelling, and using "a high voice stating what had occurred." N.T. at 81. The video at the scene of the accident, where the declarant yelled Appellant tried to back out, was taken while the victim who was struck by Appellant's vehicle was still on the ground, and the trial court specifically found the declarant to be speaking in an excited tone. **Id.** at 71; **see** Commonwealth's Ex. 3. The circumstances surrounding the statements, including the tone and volume of declarants, the proximity from the scene of the accident where the victim was seriously injured, and the close temporal relationship, are sufficient to establish the declarants witnessed the startling event of the accident. **See Murray**, 83 A.3d at 157-58. Thus, this claim fails.

Appellant's three remaining issues challenge the sufficiency of the Commonwealth's evidence.

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trail in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence

---

[11] Although Appellant's issues involve three instances of testimony, they concern two objectionable statements.

and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of the witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. LaBenne*, 21 A.3d 1287, 1289 (Pa. Super. 2011) (citation omitted).

For her third issue, Appellant submits the evidence was insufficient to find her guilty of DUI and aggravated assault by DUI. Appellant's Brief at 33. Appellant argues there is insufficient evidence to demonstrate she "actually had drugs in her system or that she was impaired." *Id.* at 36. Appellant posits, "the only evidence that [Appellant] was under the influence was her statement regarding sleeping pills." *Id.* We disagree.

The trial court found Appellant guilty of DUI under Section 3802(d)[12] which provides:

_____

[12] The trial court also convicted Appellant of aggravated assault while DUI which provides:

**§ 3735.1 Aggravated Assault by vehicle while driving under the influence**

- 19 -

**§ 3802. Driving under the influence of alcohol or controlled substance**

\* \* \*

(d) **Controlled substances.—**An individual may not drive, operate or be in actual physical control of the movement of the vehicle under any of the following circumstances:

\* \* \*

(2) The individual is under the influence of a drug or combination of drugs to a degree which impairs the individual's ability to safely drive, operate or be in actual physical control of the movements of the vehicle.

75 Pa.C.S. § 3802(d)(2). We note that, "subsection 3802(d) does not limit, constrain, or specify the type of evidence that the Commonwealth can proffer to prove its case." ***Commonwealth v. Griffith***, 32 A.3d 1231, 1239 (Pa. 2011).

The evidence, viewed in the light most favorable to the Commonwealth, established Appellant was operating her vehicle at approximately 10:45 a.m. on February 17, 2012, it was a sunny day, and

---

**(A) Offense defined.—**Any person who negligently causes serious bodily injury to another as the result of a violation of Section 3802 (relating to driving under the influence of alcohol or controlled substance) and who is convicted of violating section 3802 commits a felony of the second degree when the violation is the cause of the injury.

75 Pa.C.S. § 3735.1. As Appellant only challenges the DUI element of the offense, we need only address the sufficiency of her conviction under Section 3802.

she struck two vehicles before striking the victim, who was standing in a bike lane. N.T. at 47, 62. The force with which Appellant hit the victim caused her to "flip[] up in the air." *Id.* at 56-57. Officer Welch asked Appellant if "she had any medical conditions which may have caused the accident" and whether "she was on any type of medication," and Appellant informed her "she takes prescription sleeping pills." *Id.* at 21; *see id.* at 89, 91. Further, Appellant was "very slow moving" and had to be asked "several times" for her information before she complied. *Id.* at 23. We recognize Appellant did not submit to a blood test, but we conclude the combined circumstances demonstrate Appellant's ingestion of prescription sleep medication impaired her ability to safely operate her vehicle. *See* 75 Pa.C.S. § 3802; *LaBenne*, 21 A.3d at 1289; *see also Commonwealth v. DiPanfilo*, 993 A.2d 1262, 1267-68 (Pa. 2010) (considering the sufficiency of evidence under Section 3802(d) and noting, "we cannot ignore the fact that [a]ppellant refused a blood test[13]" because finding insufficient evidence for DUI based on the absence of a blood test "would permit [drug users] to drive under the influence of those drugs and avoid prosecution entirely"). Moreover, our review of the entire record reflects no other cause for the accident. *See DiPanfilo*, 993 A.2d at 1268. Accordingly, there is sufficient

---

[13] In prosecutions for DUI under Section 3802, the refusal to submit to chemical testing "may be introduced in evidence along with other testimony concerning the circumstances of refusal. No presumption shall arise from this evidence but it may be considered along with other factors concerning the charge." 75 Pa.C.S. § 1547(e).

evidence to support Appellant's convictions for DUI and aggravated assault while DUI. *See LaBenne*, 21 A.3d at 1289.

For Appellant's fourth issue, she contends there was insufficient evidence to convict her of accident involving death or personal injury. Appellant's Brief at 38. Appellant notes she "left the scene on foot after the complainant was removed by an ambulance." *Id.* at 41. She argues that a reasonable inference for her departure from the scene is "she . . . no longer felt safe." *Id.* at 42. We conclude Appellant is not entitled to relief.

The relevant statute provides:

> **§ 3742.  Accidents involving death or personal injury**
>
> **(a) General rule.—**The driver of any vehicle involved in an accident resulting in injury or death of any person shall immediately stop the vehicle at the scene of the accident or as close thereto as possible but **shall then forthwith return to and in every event shall remain at the scene of the accidence until he has fulfilled the requirements of section 3744 (relating to duty to give information and render aid).** Every stop shall be made without obstructing traffic more than is necessary.

75 Pa.C.S. § 3742(a) (emphasis added).

> Section 3742 is a hit-and-run statute, . . . and is aimed at punishing drivers who attempt to flee the scene of an accident in which they had been involved without fulfilling their legal duty to stop, give information, and render aid. Section 3742 was intended to deal with a very serious problem-the hit-and-run driver, who is seeking to evade responsibility. While § 3742 is a 'penal' statute and should be strictly construed, it should not be so narrowly and technically construed as to reach an absurd result.

*Commonwealth v. Klein*, 795 A.2d 424, 429 (Pa. Super. 2002) (citation omitted).

Section 3744 provides, in relevant part:

**§ 3744. Duty to give information and render aid**

**(a) General rule.—** The driver of any vehicle involved in an accident resulting in injury to or death of any person or damage to any vehicle or other property which is driven or attended by any person shall give his name, address and the registration number of the vehicle he is driving, and shall upon request exhibit his driver's license and information relating to financial responsibility to any person injured in the accident or to the driver or occupant of or person attending any vehicle or other property damaged in the accident and shall give the information and upon request exhibit the license and information relating to financial responsibility to any police officer at the scene of the accident or who is investigating the accident and shall render to any person injured in the accident reasonable assistance, including the making of arrangements for the carrying of the injured person to a physician, surgeon or hospital for medical or surgical treatment if it is apparent that treatment is necessary or if requested by the injured person.

75 Pa.C.S. § 3744(a).

Instantly, Appellant does not dispute the accident involved injury to the victim. **See** Appellant's Brief at 42. The evidence established that following the accident, Appellant attempted to leave in her car before eventually walking away from the accident on foot. **See** N.T. at 20, 62, 80-81, 85. Appellant was approximately one block away from the accident when she encountered Officer Welch. **See id.** at 20, 80-81, 85, 91. Viewing the evidence and all inferences in the light most favorable to the

Commonwealth, we conclude there was sufficient evidence to show Appellant left the scene of the accident without fulfilling her requirements pursuant to Section 3744(1). *See* 75 Pa.C.S. § 3742(a); *LaBenne*, 21 A.3d at 1289. We do not believe our construction of the statute under the facts before us leads to an absurd result. *See Klein*, 795 A.2d at 429.

Finally, Appellant contends there was insufficient evidence to establish that she is guilty of PIC by the use of her vehicle. Appellant's Brief at 43. She argues PIC "requires a specific intent to employ the instrument criminally" and "[n]o such intent [was] demonstrated by [Appellant's] negligent actions." *Id.* at 47. We agree.

> A person commits the offense of PIC when he "possesses any instrument of crime with intent to employ it criminally." 18 Pa.C.S.A. § 907(a). An instrument of crime is defined as (1) anything specially made or specially adapted for criminal use, or (2) anything used for criminal purposes and possessed by the actor under circumstances not manifestly appropriate for lawful it may have. 18 Pa.C.S.A. § 907(d).

*Commonwealth v. Brown*, 23 A.3d 544, 561 (Pa. 2011).

> Our Supreme Court has held that "an actor's criminal purpose . . . provides the touchstone of his liability for possessing an instrument of crime. Such purpose may be inferred from the circumstances surrounding the possession." *Commonwealth v. Andrews*, . . . 768 A.2d 309, 317-18 ([Pa.] 2001) . . . Our courts have emphasized that mere possession of an instrument of crime, standing alone, cannot support an inference that the defendant intended to use the instrument of crime for a criminal purpose. *Commonwealth v. Hardick*, . . . 380 A.2d 1235, 1237 ([Pa.] 1977) (providing that "proof of intent requires more than possession"); *Commonwealth v. Foster*, . . . 651 A.2d 163, 165 ([Pa. Super.] 1994)

(stating "[a]lthough criminal intent can be inferred beyond a reasonable doubt from the surrounding circumstances, it cannot be inferred from mere possession").

*In re A.V.*, 48 A.3d 1251, 1253-54 (Pa. Super. 2012).

Viewing all the evidence and reasonable inferences in the light most favorable to the Commonwealth, we conclude there was insufficient evidence to support Appellant's PIC conviction. **See LaBenne**, 21 A.3d at 1289. Indeed, the Commonwealth did not present any evidence to show that Appellant had the requisite intent to employ her vehicle criminally. 18 Pa.C.S. § 907(a). Although intent may properly be inferred from the surrounding circumstances, the Commonwealth failed to prove that Appellant possessed her vehicle with the intent to employ it in a criminal manner. **See id.**; **Brown**, 23 A.3d at 561; **In re A.V.**, 48 A.3d at 1253-54. Accordingly, we vacate Appellant's conviction for PIC.

Based on the foregoing, we affirm Appellant's judgment of sentence with respect to her convictions for DUI, aggravated assault by a vehicle while DUI, accidents involving death or personal injury, simple assault, and REAP. We vacate Appellant's conviction for PIC; however, because Appellant was sentenced to five years' probation on PIC concurrent to a seven year probationary sentence, we need not remand for resentencing. **See Commonwealth v. Thur**, 906 A.2d 552, 569 (Pa. Super. 2006) (noting, "[i]f our disposition upsets the overall sentencing scheme of the trial court we must remand so that the court can restructure its sentence plan. By

- 25 -

contrast, if our decision does not alter the overall scheme, there is no need for a remand." (citations omitted)).

Judgment of sentence for PIC vacated; judgment of sentence affirmed in all other respects.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/12/2016