J-A32004-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JASON PAUL SCHROCK | : | No. 841 MDA 2017 |

Appeal from the Order Entered May 10, 2017
In the Court of Common Pleas of Franklin County
Criminal Division at No(s): CP-28-CR-0000775-2016

BEFORE:   OTT, J., DUBOW, J., and STRASSBURGER[*], J.

MEMORANDUM BY OTT, J.:                    **FILED JANUARY 10, 2018**

The Commonwealth appeals from the order entered May 10, 2017, and clarified on May 11, 2017,[1] in the Franklin County Court of Common Pleas, which granted, in part, Jason Paul Schrock's pretrial motion in *limine*, and prohibited a state trooper from offering lay opinion testimony based on "scientific, technical or other specialized knowledge within the scope of Pa.R.Evid. 702." Order, 5/11/2017.  On appeal, the Commonwealth contends the trial court's ruling was erroneous, and the trooper should be permitted to testify regarding his observations as a lay witness.  For the reasons below, we affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] The Commonwealth has properly certified in its notice of appeal that the order will "substantially handicap the prosecution" pursuant to Pa.R.A.P. 311(d).  Notice of Appeal, 5/24/2017.

The following facts were developed during a pretrial suppression hearing, and summarized by the trial court in its opinion disposing of the motion:

Robert Adams lives at 2102 Stillhouse Road, Shippensburg, Franklin County, Commonwealth of Pennsylvania. He owns the property at that address, and resides there with his son Tim Adams and Judy.[10] During the overnight hours of April 8, 2016 - April 9, 2016, [Schrock] and his then girlfriend, Katelyn Rock, arrived at Mr. Adams' residence. They went into the room above a shed on the property; at approximately 8:00 p.m., [Schrock] snorted heroin and Ms. Rock injected heroin. At some point that same evening, Mr. Adams learned that his grandson, [Schrock], was present on the property with Ms. Rock. Mr. Adams had previously advised [Schrock] that he was not permitted upon the property.

_____

[10] It was not clear from Mr. Adams' testimony whether Judy is a relative of his, wife/paramour of himself or his son, or just a tenant.

_____

Upon learning of the presence of [Schrock], Mr. Adams contacted the Pennsylvania State Police (hereinafter "PSP") for assistance. He advised PSP that there were unwanted individuals on his property and that one or both of them may have warrants for their arrest. Trooper Benjamin Frantz[11] was dispatched to Mr. Adams' residence.

_____

[11] Trooper Frantz has been employed by PSP since January 21, 2007, and has extensive training in detecting the effects of an individual under the influence of controlled substances or alcohol. Specifically, he received training at the PSP Academy, completed Advanced Roadside Impaired Driving Enforcement training, and is certified as a Drug Recognition Expert by the Pennsylvania Chief's Association and the United States Department of Transportation. In his career he has interacted with hundreds of individuals under the influence of a controlled substance.

_____

At the time he was dispatched, Trooper Frantz was advised that there was a report of two (2) unwanted individuals who were trespassing and were possibly wanted by law enforcement authorities. Upon arrival at Mr. Adams' residence, Trooper Frantz spoke with Mr. Adams. Mr. Adams advised him that [Schrock] and Ms. Rock were in a shed on the property and that Mr. Adams wanted them removed. Mr. Adams told Trooper Frantz that his grandson's name was "Jason."

Trooper Frantz asked Mr. Adams if he could come onto the property to search for [Schrock] and Ms. Rock; Mr. Adams advised him that he could. In fact, Mr. Adams showed Trooper Frantz the location of the shed. [Schrock] and Ms. Rock were located in the upstairs room above the shed, which was accessed by an exterior staircase.

Trooper Frantz opened the door to the room and immediately observed [Schrock] seated in a chair inside the door. Trooper Frantz also observed Ms. Rock move immediately to a love seat and sit down. Trooper Frantz noticed a cloud of smoke which had an odor consistent with recent narcotic use. He observed fresh "track marks" on Ms. Rock's arms, so recent that they were still bleeding. He did not observe track marks on [Schrock's] arms. Both [Schrock] and Ms. Rock had droopy eyelids, which Trooper Frantz noted is consistent with recent opiate use.

Trooper Frantz engaged [Schrock] and questioned why he was there. [Schrock] advised him that he had the permission of his father (Mr. Adams' son, Tim) to be present on the property. While talking to the [Schrock], Trooper Frantz noted that [Schrock's] responses were lethargic, which is consistent with recent narcotic use. Trooper Frantz obtained identifying information for both [Schrock] and Ms. Rock and ran[12] their names for wants/warrants. Ms. Rock provided a false name to Trooper Frantz.

---

[12] Trooper Frantz could not recall if he ran the names himself, or whether another Trooper did.

---

During his investigation, Trooper Frantz asked Ms. Rock where her "kit" was; as explained by Trooper Frantz, a "kit" is typically a small bag or container where a drug abuser keeps their

drug delivery devices and other drug-use paraphernalia, as well as controlled substances. She advised him that it was in her purse.

Trooper Frantz observed the purse on the floor and approached it. The purse was open and, without touching or otherwise manipulating the purse, Trooper Frantz observed used hypodermic needles, a tourniquet, cotton, and burnt spoons in an open bag inside the purse.[13] Upon retrieving the kit for closer examination, Trooper Frantz also observed capsules containing a brown/off-white substance. The substance's characteristics were consistent with heroin.

_____

[13] The Court notes that these items are commonly used for ingesting controlled substances, particularly heroin.

_____

At some point, Trooper Frantz took both [Schrock] and Ms. Rock into custody[14] for the instant offenses.[15] Trooper Frantz then conducted an immediate search of the area within arms' reach[16] of [Schrock] and Ms. Rock. He located a jacket which appeared to belong to a male; when he questioned [Schrock] regarding ownership of the jacket, [Schrock] said it was his. Upon searching the jacket, Trooper Frantz located a bag of marijuana.

_____

[14] It is not clear from the testimony at what precise point Trooper Frantz placed [Schrock] and Ms. Rock under arrest.

[15] Ms. Rock was charged similarly to [Schrock]; however, she was additionally charged with providing false identification to law enforcement. Trooper Frantz was also aware by this time that [Schrock] was under the supervision of state parole.

[16] Mr. Adams testified that the room in question is approximately 10 feet by 10 feet; Trooper Frantz opined that it was a bit larger in dimensions. Suffice it to say, the room was not large.

Trial Court Opinion, 3/29/2017, at 5-7.

Schrock was subsequently charged with possession of a controlled substance, possession of drug paraphernalia (three counts), and possession

of marijuana for personal use.[2]  Although counsel was initially appointed, the trial court later granted Schrock's request to proceed *pro se* following a *Grazier*[3] hearing conducted on October 12, 2016.  Thereafter, Schrock filed several pretrial motions including an *omnibus* motion for pretrial relief, which the trial court granted in part, and denied in part, on March 29, 2017.[4]

Relevant to this appeal, Schrock filed a motion *in limine* on April 28, 2017, seeking, *inter alia*, to prohibit Trooper Frantz from offering "expert" testimony and referring to his training as a "drug recognition expert."  Motion *in Limine*, 4/28/2017, at unnumbered 5-6.  In response, the Commonwealth filed an answer, asserting Trooper Frantz "**will not be tendered as an expert at trial**," but rather, would be "offering testimony as a lay witness based on his training, to include his training as a DRE, and experience and perception of the events on the evening in question as to whether [Schrock] appeared to be high and/or under the influence" of drugs.  Commonwealth's Answer, 5/4/2017, at unnumbered 4 (emphasis supplied).

On May 10, 2017, the trial court entered an order granting, in part, and denying, in part, Schrock's motion.  For purposes of this appeal, the court

---

[2] **See** 35 P.S. §§ 780-113(a)(16), (a)(31)(i), and (a)(32), respectively.

[3] **See Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1998).

[4] The trial court granted Schrock's motion to suppress a statement he made to Trooper Frantz admitting that he uses heroin and marijuana.  **See** Order, 3/29/2017.  However, the court denied Schrock's motion to suppress the evidence recovered from the purse and jacket, as well as a motion for writ of *habeas corpus*.  **See id.**

directed: "Trooper Benjamin Frantz is prohibited from testifying as an expert witness or offering an opinion that would fall within the parameters of Pa.R.Evid. 702." Order, 5/10/2017, at ¶ 6. The next day, the Commonwealth filed a motion for clarification. In an order dated May 11, 2017, the court denied the motion, but explained:

> In granting [Schrock's] *Motion in Limine* on this point, the Court relied exclusively upon the Commonwealth's assertion that it would not be calling Trooper Frantz as an expert witness. Since the Commonwealth is not tendering Trooper Frantz as an expert, *ip so facto* his testimony in the manner of any opinion is limited by Pa.R.Evid. 701. In other words, if Trooper Frantz's opinion sought to be introduced by the Commonwealth is based on scientific, technical, or other specialized knowledge within the scope of Pa.R.Evid. 702, it is not admissible since he is not being offered as an expert witness.

Order, 5/11/2017 (emphasis in original). This Commonwealth appeal follows.[5]

The Commonwealth's sole issue on appeal[6] asserts the trial court abused its discretion in prohibiting Trooper Frantz from offering lay opinion testimony that based upon his experience as a DRE, he believed Schrock was under the

_____

[5] On May 30, 2017, the trial court ordered the Commonwealth to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). The Commonwealth complied with the court's directive, and filed a concise statement on June 19, 2017.

We note, too, that in July of 2017, Schrock requested, and was granted, appointment of counsel to assist him on appeal. **See** Order, 7/5/2017. After counsel filed Schrock's appellee brief, he requested permission to withdraw in the trial court. By order entered November 21, 2017, the trial court held counsel's motion in abeyance until after a ruling from this Court, in order to "avoid undue prejudice" to Schrock. Order, 11/21/2017.

[6] Although the Commonwealth lists two issues in its brief, we have consolidated them for ease of disposition.

influence of narcotics on the night in question. *See* Commonwealth's Brief at 19.

Our review of a trial court's ruling on a motion *in limine* is well-established:

> When ruling on a trial court's decision to grant or deny a motion *in limine*, we apply an evidentiary abuse of discretion standard of review. "A trial court has broad discretion to determine whether evidence is admissible," and a trial court's ruling regarding the admission of evidence "will not be disturbed on appeal unless that ruling reflects manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support to be clearly erroneous."

*Commonwealth v. Belani*, 101 A.3d 1156, 1160 (Pa. Super. 2014) (internal citations omitted).

With regard to the specific issue presented *sub judice*, we note Pennsylvania Rule of Evidence 701 provides that a lay witness may offer opinion testimony so long as it is:

> (a) rationally based on the witness's perception;
>
> (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
>
> (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Pa.R.E. 701. Rule 702 sets forth the qualifications for expert opinion testimony, including, *inter alia*, that the expert have "scientific, technical, or other specialized knowledge [] beyond that possessed by the average layperson[.]" Pa.R.E. 702(a).

Here, the Commonwealth insists Trooper Frantz should be permitted to provide lay opinion testimony that: (1) Schrock was under the influence of

- 7 -

narcotics on the night in question; (2) the odor in the room was consistent with recent narcotic/heroin use; and (3) the drug paraphernalia found at the scene was a "drug kit" commonly possessed by drug users. **See** Commonwealth's Brief at 20-28. The Commonwealth maintains these opinions were based solely upon Trooper Frantz's observations, coupled with his experience as a DRE. **See id.** at 23-24. Specifically, the Commonwealth argues the trooper's observations of Schrock's behavior and demeanor were "'typical and obvious' indicia of recent narcotic use which make the admission of a lay witness opinion on the issue appropriate[.]" **Id.** at 24 (citation omitted). Moreover, it contends the trooper's opinion that the odor in the room was consistent with recent narcotic use was not based on specialized knowledge because "the average layperson understands how ones (sic) sense of smell works[.]" **Id.** at 26. Further, the Commonwealth argues "a layperson could quite easily comprehend what a drug kit is … without the necessity of expert testimony." **Id.** at 27.

The trial court addressed the Commonwealth's arguments as follows:

[T]he Commonwealth rather bizarrely asserts that Trooper Frantz will not be offered as an expert witness,[7] but will "be offering testimony as a lay witness based on his training, to include his training as a DRE, and experience and perception of the events on the evening in question as to whether [Schrock] appeared to be high and/or under the influence of an intoxicating substance." The

---

[7] The Commonwealth has provided no explanation as to why it will not offer Trooper Frantz as an expert witness, particularly considering his training as a DRE.

Commonwealth further argues that the issues raised by [Schrock] go to the weight of Trooper Frantz's testimony, and not its admissibility. Finally, the Commonwealth points out that [Schrock] will have the opportunity to cross-examine Trooper Frantz during trial on the issues raised.

The Commonwealth avers that the observations and conclusions of Trooper Frantz are admissible under Pa.R.Evid. 701. … In the Court's mind, it defies logic to suggest, as the Commonwealth does, that Trooper Frantz's testimony falls within Pa.R.Evid. 701 and not Pa.R.Evid. 702. While Trooper Frantz can certainly testify under Pa.R.Evid. 701 regarding his observations and perceptions, any conclusion derived therefrom that [Schrock] was under the influence of heroin inexorably originates from the Trooper's training, education and experience.

Since the Commonwealth has indicated that Trooper Frantz will not be offered as an expert witness, he will be permitted to testify as to what he observed; however, because he is not offered as an expert witness under Pa.R.Evid. 702, he is prohibited from testifying to any conclusion based upon his training, education or experience, *i.e.*, any conclusion that would fall within the gambit of Pa.R.Evid. 702. *See* Pa.R.Evid. 701(c).

* * * *

As a result of the Commonwealth's decision not to have Trooper Frantz testify as an expert, his status as a Drug Recognition Expert[7] becomes irrelevant.

_____

[7] It should not be lost on either party that the word "expert" is in the very title of Trooper Frantz's status as a DRE.

Trial Court Opinion, 5/10/2017, at 5-6 (some internal citations and footnote omitted). The trial court also provided several examples of permissible and impermissible testimony under its ruling. ***See id.*** at 6-7 (explaining the trooper could (a) testify he smelled an odor when he entered the room, (b) identify the objects in Rock's purse, and (c) describe Schock's physical behavior; but could not (a) identify the odor as recent heroin use, (b) identify

the items in Rock's purse as a "drug kit" and explain possession of such a kit was indicative of recent drug use, and (c) testify that Schrock's physical appearance was indicative of recent heroin use).

We agree with the trial court's ruling, and find this Court's recent *en banc* decision in ***Commonwealth v. Gause***, 164 A.3d 532 (Pa. Super. 2017), *appeal denied*, ___ A.3d ___ (Pa. Oct. 26, 2017), instructive. In ***Gause***, a police officer conducted a stop of the defendant's vehicle for a minor traffic violation. Although the defendant did not immediately appear to be under the influence of drugs or alcohol, the officer smelled alcohol and the defendant acknowledged he had one beer at a friend's house. ***See id.*** at 535. The officer then conducted several field sobriety tests, and based on the results, the defendant was arrested and charged with, *inter alia*, driving under the influence of a controlled substance. ***See id.*** at 534-535.

Relevant herein, the arresting officer testified at trial that, in her opinion, the defendant was under the influence of marijuana at the time of the traffic stop based on body and eyelid tremors he displayed during one of the field sobriety tests. ***See id*** at 536. After he was convicted, the defendant appealed. A panel of this Court vacated the judgment of sentence, concluding the trial court erred in permitting the officer's opinion testimony. The panel opined:

> Although Officer Eiker could testify as to her observations of an apparent physical condition, a qualified expert is required to provide the connection between the symptoms observed and the drug allegedly influencing the defendant's driving. ***See***

[**Commonwealth v.**] **DiPanfilo,** [993 A.2d 1262 (Pa. Super. 2010)]; **see also Commonwealth v. Allison,** 550 Pa. 4, 703 A.2d 16 (1997) (lay witness could not testify regarding "split and opened" condition of complainant's hymen in absence of qualified expert testimony to explain significance of these personal observations); **Commonwealth v. Yanoff,** 456 Pa.Super. 222, 690 A.2d 260 (1997) (murder defendant attempted to elicit objectionable opinion by asking police officer whether victim had appeared to be under influence of drugs; officer had not been qualified to render such opinion); **Commonwealth v. Yedinak,** 450 Pa.Super. 352, 676 A.2d 1217, 1222 (1996) (Beck, J., dissenting) ("[A]fter a proper foundation has been laid, a lay witness may testify as to his or her observations. However, a qualified expert is required to provide the connection between the symptoms observed and the drug allegedly influencing the defendant's driving.").

It is clear to this Court that Officer Eiker's observation of "eyelid tremors" is not the typical and obvious indicia of marijuana use, such as the distinct odor of burnt marijuana emanating from the person or the vehicle. Further, it is eminently clear that attributing body or eyelid tremors to marijuana use requires specialized knowledge within the scope of Pa.R.E. 702. Unlike staggering, stumbling, glassy or bloodshot eyes, and slurred speech, the "ordinary signs of intoxication discernable by a layperson," eye tremors are *not* an ordinary sign of ingestion of a controlled substance, in particular, marijuana. As the trial court acknowledged, Officer Eiker's testimony as to her observations **did not obviate the necessity of an expert** to explain whether "eye tremors," or "body tremors," would indicate that someone was under the influence of marijuana and that this impaired his ability to safely drive, in violation of section 3802(d)(2). **See DiPanfilo, supra; cf. Commonwealth v. Jones,** 121 A.3d 524 (Pa. Super. 2015) (as matter of first impression, police officer's smelling strong, distinct odor of burnt marijuana emanating from vehicle during traffic stop provided reasonable grounds, by itself, to request chemical testing); **Commonwealth v. Etchison,** 916 A.2d 1169 (Pa. Super. 2007). Because it required specialized knowledge, Officer Eiker's testimony was inadmissible as "lay opinion." **See** Pa.R.E. 701.

*Id.* at 539 (footnotes omitted). Furthermore, the panel disagreed with the trial court's ruling that the error was harmless. The panel explained: "Without expert testimony to explain a connection, if any, the jury was permitted to engage in speculation that the observation of eye tremors indicates marijuana impairment, or, at the least, ingestion." *Id.* at 540.

We find Trooper Frantz's opinion testimony in the present case to be similarly flawed. At the suppression hearing, the trooper described Schrock and Rock as both having a pale complexion and droopy eyelids – proper lay witness testimony - but then he inappropriately testified that their appearance was "indicative in [his] **expertise** that they had recently used some type of drug, specifically an opiate." N.T., 2/6/2017, at 21 (emphasis supplied). Similarly, the trooper's testimony that there was a "chemical odor" in the air was proper; however, his follow-up statement that the odor was indicative of recent narcotic use was based on his DRE training, and, thus, represented expert testimony. *See id.* Lastly, with respect to Rock's "drug kit," Trooper Frantz's description of the paraphernalia observed in the purse was proper, but his conclusion, based on his "training and experience," that the items constituted "a heroin kit used to inject the drug" was improper expert testimony. *Id.* at 23.

Accordingly, because we agree Trooper Frantz should not be permitted to provide expert opinion testimony when he is not being offered as an expert

witness, we affirm the trial court's order granting, in part, Schrock's motion *in limine*.

Order affirmed. Case remanded for further proceedings. Jurisdiction relinquished. Schrock's *pro se* petition for leave to file supplemental appellee brief is denied as moot.

Judge Dubow joins this memorandum.

Judge Strassburger files a concurring and dissenting memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/10/2018