J-A01001-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CHARLES M. MERVIN | : | |
| | : | |
| Appellant | : | No. 989 EDA 2018 |

Appeal from the Judgment of Sentence March 1, 2018
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0010769-2017

BEFORE:  OTT, J., STABILE, J., and McLAUGHLIN, J.

MEMORANDUM BY OTT, J.:                **FILED MAY 07, 2019**

Charles M. Mervin appeals from the judgment of sentence imposed on March 1, 2018, following a bench trial, in the Court of Common Pleas of Philadelphia County.  Mervin was convicted of one count of DUI: Controlled Substance (marijuana) – Impaired Ability.[1]  He was sentenced to a term of 72 to 144 hours' incarceration, with immediate parole after 72 hours.  In this timely appeal, Mervin argues there was insufficient evidence to support his conviction.  After a thorough review of the submissions by the parties, relevant law, the certified record, we affirm.

> The standard of review for claims of insufficient evidence is well-settled. With respect to such claims, we consider the evidence in the light most favorable to the Commonwealth as verdict winner. ***Commonwealth v. Barnes***, 871 A.2d 812, 819 A.2d Super. 2005). In that light, we decide if the evidence and all reasonable inferences from that evidence are sufficient to establish the

---

[1] 75 Pa.C.S. § 3802(d)(2).

elements of the offense beyond a reasonable doubt. ***Id.*** We keep in mind that it was for the trier of fact to determine the weight of the evidence and the credibility of witnesses. ***Id.*** The jury was free to believe all, part or none of the evidence. ***Id.*** This Court may not weigh the evidence or substitute its judgment or that of the factfinder. ***Id.***

***Commonwealth v. Thur***, 906 A.2d 552, 569 (Pa. Super. 2006).

We recite the facts underlying this matter as related in the trial court opinion.

On December 31, 2016, at approximately 12:03 am, Trooper Baines, Badge #13099, of the Pennsylvania State Police was on routine patrol in a marked Ford Taurus on Interstate 76 Eastbound at the intersection of Interstate 676 Eastbound with his partner, Trooper Tray. Trooper Baines had been on the force approximately two months but Trooper Tray was a far more experienced officer, having been a trooper for over a decade as of December 31, 2016. At that date, time, and location, Trooper Baines observed Mr. Charles Mervin in a black Dodge Dart, registration number JYE8566, traveling eastbound on I-76 to I-676 East.

Troopers Baines and Tray were alerted to [Mervin] when they observed

The vehicle driving aggressive. He was tailgating the vehicle in front of him…There was maybe not even a car's length in front of his vehicle. He was on – almost directly behind the vehicle ahead of his…while he was driving within his lane, he was weaving kind of, not driving straight, but side-to-side.

Additionally, using a police vehicle speedometer, Trooper Baines clocked [Mervin] traveling "at 70 miles per hour in a 50 miles per hour zone."

After observing [Mervin's] driving for at least one-half mile, Trooper Baines activated his "emergency lights and sirens." "The vehicle came to stop on the left travel lane. [Trooper Tray] had to exit the vehicle and advise the operator to move to the right shoulder which he complied." Trooper Baines described that

- 2 -

stretch of road as "So it's about three lanes, and there is a right shoulder right where Broad Street exit is," and [Mervin] pulled over to "the left lane, directly next to the wall separating the east and westbound lanes," where he was blocking other traveling cars.

Once [Mervin] pulled over to the shoulder, Trooper Baines "approached the driver's side. [He] advised the operator for the reason for the stop. And while during the interaction, [he] observed a strong odor of burnt marijuana emanating from the vehicle." Trooper Baines was familiar with the odor of both burnt and raw marijuana through training at the State Police Academy. Trooper Baines "was at the driver's side door leaning down directly face-to-face with the operator" when he observed that [Mervin's] "eyes were glassy and bloodshot, during our interactions he was laughing and giggling…" He also seemed to have difficulty obtaining his driver's license…registration and insurance cards…He was fumbling through his wallet, unsure where to find them, and just not coherent in obtaining them." [Mervin] stated that he "had smoked marijuana 30 minutes prior…to the traffic stop."

Once [Mervin] located all of his documents, Trooper Baines asked [Mervin] to exit his vehicle and administered field sobriety tests, in accordance with his training. Trooper Baines administered the "horizontal gaze nystagmus test, walk and turn, and the one leg stand." Prior to each test, Trooper Baines asked [Mervin] if he had any medical conditions which would impair his ability to successfully complete the test. During the walk and turn test, [Mervin] indicated six out of eight clues of intoxication. "During the walking phase, he stopped walking, he missed heel-to-toe, he stepped off the line, and he also took an incorrect number of steps during his first nine steps. And also did an improper turn to take his nine back." During the one leg stand, [Mervin] indicated four out of four clues of intoxication. "He hopped, he was swaying during the test, he raised his arms, and he put his foot down as well prior to the end of the 30-seconds. Based upon his observations of [Mervin] prior to and during the field sobriety tests administered, Trooper Baines formed the opinion that [Mervin] "was unfit to operate a motor vehicle due to the use of marijuana." No blood evidence was admitted, and no Drug Recognitions Expert was enlisted to further observe and administer additional field tests on [Mervin].

Trial Court Opinion, 5/22/2018, at 1-3 (citations to notes of testimony omitted).

Mervin now asserts the trial court convicted him based upon the "smell of marijuana made by a Trooper who is not a trained Drug Recognition Evaluator, no blood test results and an individual who was stopped for travelling approximately ten miles over the posted speed limit[.]" Mervin's Brief at 7-8. To support this allegation, Mervin cites **Commonwealth v. DiPanfilo**, 993 A.2d 1262 (Pa. Super 2010), for the proposition that a conviction for marijuana-related DUI must be supported by expert testimony. All parties and the trial court agree that no such expert testimony was produced. Therefore, Mervin claims, his conviction was not supported by sufficient evidence. This argument is without merit.

Initially, we note the trial court cites far more evidence than that which Mervin recounts. In reviewing this claim, we are required to examine the evidence in the light most favorable to the Commonwealth, as verdict winner, not, as Mervin would have, in the light most favorable to him. Evidence showed Mervin was travelling approximately 20 miles over the posted speed limit, not ten.[2] Mervin admitted to having smoked marijuana 30 minutes prior to the traffic stop. Trooper Baines was met with a strong odor of marijuana when he approached Mervin's car. Mervin was weaving within his lane of

_____

[2] Trooper Baines testified Mervin was travelling 70 mph in a 50 mph zone.

travel, unable to keep his vehicle in a straight path. At 70 miles per hour, Mervin was tailgating the car in front of him. When pulled over, Mervin stopped his car in a travel lane rather than pulling over to the shoulder of the road; he had to be told to move the car to the safer location. Trooper Baines observed Mervin had glassy and bloodshot eyes. Mervin had trouble finding his driver's license, registration, and insurance card and was laughing and giggling through the efforts. Mervin failed all of the field sobriety tests he was asked to perform. This is significantly more evidence than Mervin would have us believe was presented.

Additionally, **DiPanfilo** does not require expert testimony in all circumstances involving DUI-marijuana. Rather, **DiPanfilo** states:

> We acknowledge that [**Commonwealth v.**] **Etchison**, [916 A.2d 1169 (Pa. Super. 2007)] recognized a need for expert testimony in the area of marijuana, a commonly-known drug like cocaine and alcohol. However, we do not read **Etchison** as requiring expert testimony in every marijuana case,[FN] or (as Appellant seems to suggest) every illegal-drug case.
>
>> FN. For example, if a police officer stopped a driver who was driving erratically, and the driver then rolled down his window and greeted the officer through a cloud of marijuana smoke, showing the typical signs of heavy marijuana use, it would be difficult to imagine it would be necessary to establish the link between the erratic driving and the driver's marijuana use.

**Commonwealth v. DiPanfilo**, 993 A.2d 1262, 1267 (Pa. Super. 2010).[3]

_____

[3] We note **Etchison** is also distinguishable from the instant matter in that the only evidence of marijuana use there was a blood test demonstrating 53

- 5 -

Our review of the certified record leads to the inescapable conclusion that the instant factual situation virtually mirrors the example given in **DiPanfilo** for the circumstance where no expert testimony is required. We agree with the reasoning of **DiPanfilo** that there are some circumstances where lay observations, especially those observations by a trained police officer[4], provide sufficient information to conclude the erratic driving was linked to the marijuana usage.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/7/19

_____

nanograms of metabolites of cannabinoids. As the concurring and dissenting opinion of Judge John T. Bender noted, the Commonwealth presented no evidence of recent use – including no odor of marijuana and no "damning admission" of recent use, **Etchison**, **supra** at 1175, both of which are present instantly.

[4] While Trooper Baines was not a trained Drug Recognition Evaluator, he was generally trained to detect signs of intoxication and the inability to safely operate a motor vehicle, as well as the indicia of marijuana use.