COMMONWEALTH of Pennsylvania,
Appellee

v.

Steven P. DIPANFILO, Appellant.

Superior Court of Pennsylvania.

Argued Feb. 23, 2010.

Filed April 16, 2010.

Timothy P. Wile, Norristown, for appellant.

John E.D. Larkin, Assistant District Attorney, Norristown, for Commonwealth, appellee.

BEFORE: BOWES, OLSON and FITZGERALD,* JJ.

OPINION BY OLSON, J.:

¶ 1 Appellant, Steven P. DiPanfilo, appeals from the judgment of sentence entered on June 25, 2009. We affirm.

¶ 2 The trial court summarized the facts as follows:

At approximately 5:30 a.m. on March 27, 2007 Gerald Gebbie, a resident of the 1000 block of Poplar Street, Lansdale, Montgomery County, was awoken by the sound of metal crunching, a slow scraping sound. Gebbie looked out of his window, down to the street, which is a distance of approximately 25 to 30 feet. Gebbie observed that a truck crashed into a handicapped sign, jumped the six inch curb and landed with two of its wheels on the curb. Gebbie's view of the accident was unobstructed and there were two illuminated lights in the vicinity.

* Retired Justice specially assigned to the Superior Court.

Gebbie observed a white male, the sole occupant of the vehicle, exit the vehicle looking disoriented. Appellant left the driver's side door open, headlights on and slowly walked around to the front of the vehicle. After standing there for a moment, Appellant walked away from the scene of the accident. Gebbie called police.

Officer Adrienne Duffy, a nine year veteran of the Lansdale Police Department, responded to the report of a vehicle accident, and spoke to Gebbie about what he had just witnessed. A check of the registration revealed that the vehicle was registered to Appellant. Based on Gebbie's information and description, the officer located Appellant. Appellant was the only person Officer Duffy observed in the neighborhood, and he matched Gebbie's description. Upon seeing Appellant, Officer Duffy exited her vehicle, identified herself as a police officer and told him to stop. Initially, Appellant stopped walking, but then he turned and fled on foot. After a short foot chase, Officer Duffy caught up to Appellant when he fell down a flight of stairs. Officer Duffy took Appellant into custody, and called for an ambulance because Appellant complained of ankle and foot pain. Officer Duffy took Appellant back to the scene, and Gebbie identified.

At trial Officer Duffy testified that when she came upon Appellant, he appeared very lethargic, his movements were very slow, his speech was slurred and his skin had a grey appearance. Officer Duffy also testified that based upon her years as a police officer, her specialized training and experience and the specific observations of Appellant,

she believed Appellant was under the influence of a controlled substance to the extent that he was incapable of safely driving or operating a motor vehicle. Officer Duffy did not have Appellant perform a field sobriety test because she believed that Appellant could not perform it safely due to his possible ankle and foot injury.

The ambulance took Appellant to Abington Health Lansdale Hospital. Once at the hospital, Officer Duffy requested that Appellant undergo chemical testing. She read the chemical testing request and refusal form in its entirety. Appellant was uncooperative and refused to give blood and sign the form. Because Appellant refused to sign the form, Officer Duffy marked the form on the signature line as "refused." However a routine urine drug screen was taken at the hospital at approximately 7:56 a.m., which revealed the presence of cocaine metabolites and opiates.

On April 2, 2009 a jury trial was conducted, at the conclusion of which Appellant was found guilty of driving under the influence and careless driving. On June 25, 2009 we sentenced Appellant to a term of 16 months to 5 years' imprisonment. [This appeal followed].

Trial Court Opinion, 9/16/09, at 1–3.

¶ 3 Appellant raises one issue on appeal:

1. Is there legally sufficient evidence of record to support Appellant's conviction for violating 75 Pa.C.S. § 3802(d)(2)?

Appellant's Brief at 4.[1]

¶ 4 Appellant argues that the Commonwealth presented insufficient evidence that he was "under the influence of a drug or combination of drugs to a de-

---

1. Appellant preserved this issue in a timely concise statement of errors complained of on appeal under Pa.R.A.P. 1925. The trial court issued a Rule 1925 opinion on September 16, 2009.

gree which impairs the individual's ability to safely drive." *See* 75 Pa.C.S.A. § 3802(d)(2). Appellant admits that he had cocaine metabolites and opiates[2] in his urine, but argues that this evidence cannot be scientifically linked to any impairment. Moreover, Appellant argues that the law requires proof from expert witnesses, because "the impairing effect of controlled substances upon an individual is beyond the experience of lay persons." Appellant's Brief at 10. In advancing the argument that the Commonwealth failed to prove its case with expert testimony, Appellant relies primarily on *Commonwealth v. Griffith*, 985 A.2d 230 (Pa.Super.2009) and *Commonwealth v. Etchison*, 916 A.2d 1169 (Pa.Super.2007), *affirmed*, 596 Pa. 351, 943 A.2d 262 (2008).

¶ 5 In *Griffith*, this Court recently set forth our standard of review and key elements of the substantive law in this area. We recite it here at length:

> As a general matter, our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.
>
> Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty, and may sustain its burden by means of wholly circumstantial evidence. Significantly, we may not substitute our judgment for that of the factfinder; if the record contains support for the convictions they may not be disturbed. So

long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, his convictions will be upheld. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

The conviction challenges arose from application of the specific requirements of 75 Pa.C.S. § 3802(d)(2), and may be affirmed only to the extent that the evidence adduced established beyond a reasonable doubt that [his] conduct was proscribed by its provisions. Section 3802(d) defines the circumstances under which an individual who has consumed controlled substances alone or in combination or in combination with alcohol may not operate a motor vehicle. That section provides as follows:

**§ 3802. Driving under influence of alcohol or controlled substance**

\* \* \* \* \* \*

**(d) Controlled substances.**—An individual may not drive, operate or be in actual physical control of the movement of a vehicle under any of the following circumstances:

(1) There is in the individual's blood any amount of a:

(i) Schedule I controlled substance, as defined in the act of April 14, 1972 (P.L. 233, No. 64), known as The Controlled Substance, Drug, Device and Cosmetic Act;

(ii) Schedule II or Schedule III controlled substance, as defined in The Controlled Substance, Drug, Device and

---

2. The hospital's discharge report did not indicate the quantity of either substance. Commonwealth's Exhibit C–2.

Cosmetic Act, which has not been medically prescribed for the individual; or (iii) metabolite of a substance under subparagraph (i) or (ii).

(2) **The individual is under the influence of a drug or combination of drugs to a degree which impairs the individual's ability to safely drive, operate or be in actual physical control of the movement of the vehicle.**

(3) The individual is under the combined influence of alcohol and a drug or combination of drugs to a degree which impairs the individual's ability to safely drive, operate or be in actual physical control of the movement of the vehicle.

(4) The individual is under the influence of a solvent or noxious substance in violation of 18 Pa.C.S. § 7303 (relating to sale or illegal use of certain solvents and noxious substances).

75 Pa.C.S. § 3802(d) (emphasis added). Notably, this section draws a distinction between driving under the combined influence of alcohol and controlled substances, *see* § 3802(d)(3) and driving under the influence of controlled substances alone, without the influence of alcohol, *see* § 3802(d)(2).

*Griffith,* 985 A.2d at 233–234 (brackets and citations omitted).

¶ 6 In *Griffith,* the police stopped defendant Griffith while she was behind the wheel of her vehicle in a parking lot. The officers had received a report that she had been driving erratically, but they also knew that her license had been suspended. She performed very poorly on field sobriety tests. She admitted to taking one Soma (Carisoprodol) earlier in the day. A hospital blood test revealed the presence of therapeutic levels of Nordiazepam (a drug in the class of valium) and Diazepam (valium) in her blood (but no Carisoprodol). Griffith was convicted under 75 Pa. C.S. § 3802(d)(2).

¶ 7 On appeal, Griffith argued that the evidence was insufficient to show impairment because the Commonwealth did not present any expert evidence linking the presence of those chemicals in her bloodstream to any impairment. This Court agreed. While we readily concluded that Griffith was incapable of safe driving, we held that the Commonwealth did not adequately prove that this impairment was caused by the influence of prescription drugs:

> As we suggested in *Smith* [3] and later echoed in *Etchison,* such an evidentiary demarcation is necessitated by the inability of the trial court or any member of the jury to take notice of the effect of prescription medication on the human body, either alone or in combination with another controlled substance, in the absence of expert testimony. Whereas the intoxicating effect of alcohol is widely known and recognized by the average layperson, *see Smith,* 831 A.2d at 640, the same cannot be said of prescription medications, either alone or in combination with other controlled substances, *see Etchison,* 916 A.2d at 1175 (Bender J. concurring) (opining that expert testimony is necessary to establish that low level of cannabinoids present in the defendant's bloodstream rendered him in-

---

**3.** *Commonwealth v. Smith,* 831 A.2d 636 (Pa.Super.2003), *appeal denied,* 576 Pa. 722, 841 A.2d 531 (2003). In that case, the defendant claimed an affirmative defense of involuntary intoxication based on her alleged failure to recognize that a combination of alcohol and a prescription medication would create a pronounced impairment. This Court affirmed the trial court's holding that the defendant failed to carry her burden of proof, in part because she presented no expert evidence to show that such a combination indeed presents that side effect. *Id.* at 640.

capable of safely operating a motor vehicle so as to sustain conviction under sections 3802(d)(2), (3)).

Thus, while the factfinder (either a lay jury or a trial judge presiding over a non-jury trial) may reach a cause and effect determination on circumstantial evidence that the defendant was rendered incapable of safe driving due to consumption of **alcohol,** it must be afforded expert testimony concerning the effects and interactions of **prescription medications** where such medications are the alleged intoxicants. Without such testimony, the effects or interactions of the medications at issue are rendered uncertain, inviting the factfinder to assume the effect of a controlled substance based merely on the fact that the defendant's conduct followed his ingestion of the controlled substance, or worse, the absence of any other explanation for his conduct. Although such inferences may be acceptable in the civil arena, subject to a lesser standard of proof and more limited constitutional protections, their insertion into a criminal prosecution imposes an unacceptable burden upon the defendant, who has no obligation to disprove the Commonwealth's case or posit any explanation for his conduct.

In this case, the Commonwealth introduced only fact testimony, calling the motorist who witnessed Griffith's erratic driving and the police officer who responded to the scene and conducted the arrest. Although the officer was able to observe and report on Griffith's condition and to reach a conclusion that she was not able to safely operate a motor vehicle, he was neither able nor qualified to testify concerning drug interactions or effects. In point of fact, the Commonwealth elicited no testimony concerning the medications at trial, instead confining its examination to the defendant's condition and the results of her blood test. Thus, the factfinder had no evidence on which to base a finding that Griffith's erratic driving was the result of her ingestion of carisoprodol, diazepam, or nordiazepam, either singly or in combination. The fact that Griffith displayed physical symptoms out of the ordinary does not, in and of itself, establish a sufficient basis for finding a causal link with ingestion of any particular drug. In the absence of expert testimony, the factfinder might have concluded just as easily that Griffith's physical symptoms were the result of the illness or condition the medications had been prescribed to treat. Thus, while the evidence adduced may have established Griffith's guilt of careless driving, reckless driving and driving on roadways laned for traffic, it was not sufficient to prove her guilt of driving under the influence of controlled substances pursuant to 75 Pa.C.S. § 3802(d)(2).

*Id.* at 236–237 (footnote omitted; emphasis in original).

¶ 8 In *Etchison,* the police stopped defendant Etchison after he drove the wrong way down an exit ramp. He smelled of alcohol and failed field sobriety tests. After his arrest, blood tests revealed a BAC of .05% and the presence of 53 milligrams of metabolites of cannabinoids. Etchison was convicted, *inter alia,* of a violation of § 3802(d)(2).

¶ 9 This Court held that the evidence was insufficient to support the § 3802(d)(2) conviction because the Commonwealth presented no evidence (aside from the bare evidence of metabolites) that Etchison was under the influence of marijuana at the time of driving, such that his ability to drive was impaired. *Id.* at 1172. We recognized that the Commonwealth's own expert did not draw a link between meta-

bolites and impairment. Rather, the presence of metabolites only showed that Appellant consumed marijuana some time in the past. *Id.*[4]

¶ 10 The instant case is unlike *Griffith* or *Etchison* in key respects. First, the drugs at issue are cocaine and opiates, rather than prescription benzodiazepines (*Griffith*) or marijuana (*Etchison*). It is true that *Griffith* recognizes the need for expert testimony in the area of prescription drugs. However, the reasoning behind that holding stems from the fact that the side-effects of prescription drugs may not be widely or publicly known, particularly when they are used to treat an underlying medical condition. In contrast, the intoxicating effects of cocaine and opiates, like the intoxicating effects of alcohol, are more widely and commonly understood than the effects of prescription medication. Expert testimony is not necessary in a DUI-alcohol case under 75 Pa.C.S.A. § 3801(a)(1); the Commonwealth may present any form of proof, including the defendant's behavior, the nature of the accident itself, and any other relevant evidence (which may or may not include blood alcohol tests). *See Commonwealth v. Segida,* 985 A.2d 871, 879 (Pa.2009).

¶ 11 We acknowledge that *Etchison* recognized a need for expert testimony in the area of marijuana, a commonly-known drug like cocaine and alcohol. However, we do not read *Etchison* as requiring expert testimony in every marijuana case,[5] or (as Appellant seems to suggest) every illegal-drug case. Rather, the holding in *Etchison* arose from the fact that the Commonwealth only proved the presence of cannabinoid metabolites in the defendant's bloodstream and marijuana is a fat-soluble drug that can remain in the blood for months. Appellant apparently recognizes that unlike cannabinoid metabolites, cocaine metabolites do not stay in the body for months. *See* Appellants' Brief at 16, citing *West v. State,* 288 Ga.App. 566, 654 S.E.2d 463 (2007) for the proposition that "cocaine metabolites remain in the body for two to four days after use." Thus, there is a closer biological link between impairment and the presence of cocaine metabolites.

¶ 12 Finally, and most importantly, we cannot ignore the fact that **Appellant refused a blood test.** Appellant seems to take the position that: (1) expert testimony is always necessary in illegal-drug cases; (2) the Commonwealth did not pro-

---

**4.** In the case of *Commonwealth v. Williamson,* 962 A.2d 1200 (Pa.Super.2008), *appeal denied,* 980 A.2d 608 (Pa.2009), the trial court suppressed "the results of a urine test which positively indicated the presence of benzodiazepines in her blood." *Id.* at 1200.[4] The trial court suppressed the report because it did not indicate the specific amount of the drug. This Court reversed, reasoning that the Commonwealth need not prove any specific quantity of the drug; it need only prove an amount sufficient to create impairment. *Id.* at 1204. We also noted that the urine test was only part of the Commonwealth's case linking impairment to drug use. The other components included Williamson's failed field sobriety tests, her erratic driving, and her admission that she had ingested two drugs within hours of being stopped. *Id.* at 1204–

1205. We also noted that "a large part of our Court's decision rested upon the fact that the ingested drug in *Etchison,* marijuana, is a fat-soluble drug that can stay metabolized in the blood months after its consumption"; moreover, the Commonwealth presented no proof that Etchison had recently ingested marijuana. *Id.* at 1205–1206.

**5.** For example, if a police officer stopped a driver who was driving erratically, and the driver then rolled down his window and greeted the officer through a cloud of marijuana smoke, showing the typical signs of heavy marijuana use, it would be difficult to imagine that expert testimony would be necessary to establish the link between the erratic driving and the driver's marijuana use.

duce an expert; and (3) even if the Commonwealth had done so, the expert's opinion would have been invalid because it was not based on **blood** tests. According to Appellant, it is impossible to extract a scientifically valid expert opinion from the "raw data" of a **urine** test. Appellant's Brief at 17. As the Commonwealth points out, the flaw in this argument is that it would permit cocaine users (and presumably other illegal drug users) to drive under the influence of those drugs and avoid prosecution entirely simply by refusing a blood test.[6] We refuse to countenance this absurd result.

■ ¶ 13 Rather than insist on proof that may lie exclusively within Appellant's own bloodstream, which he refused to provide, we will instead turn to the totality of the Commonwealth's direct and circumstantial evidence.[7] *Segida.* That evidence includes the following. First, Appellant drove at slow speed up a sidewalk and into a handicapped sign without any apparent provocation from other drivers. N.T., 4/2/09, at 15, 18–19. He emerged from the vehicle looking disoriented. *Id.*

at 16. He slowly jogged away from the police officer who arrived at the scene, but after a short time tripped into a stairwell. *Id.* at 27. "At trial Officer Duffy testified that when she came upon Appellant, he appeared very lethargic, his movements were very slow, his speech was slurred and his skin had a grey appearance. Officer Duffy also testified that based upon her years as a police officer, her specialized training and experience and the specific observations of Appellant, she believed Appellant was under the influence of a controlled substance to the extent that he was incapable of safely driving or operating a motor vehicle." Trial Court Opinion, 9/16/09, at 2–3; *see also* N.T., 4/2/2009, at 28–30.[8] Urine tests revealed the presence of cocaine metabolites and opiates. The record reflected no other potential cause for the accident and for Appellant's behavior.[9] When we construe these facts and inferences therefrom in the light most favorable to the Commonwealth as the prevailing party, we conclude that it was sufficient to establish the link between cocaine/opiate use and im-

6. Subsection 3802(d)(1) prohibits driving with any quantity of certain illegal drugs (or metabolites thereof) in one's **bloodstream.** If the person refuses to submit to a blood test, that subsection is clearly inapplicable. However, subsections (d)(2) and (d)(3) prohibit driving under the influence of both drugs and/or alcohol, so long as the individual is impaired. These subsections contain no language requiring that impairment be established through blood tests.

7. The Vehicle Code provides similar punishments for (1) those who drive under the influence of alcohol and refuse a blood test, and (2) those who **are** tested and have the highest rate of alcohol in their bloodstream. 75 Pa. C.S.A. § 3804(c). The Vehicle Code does not appear to have an analogous provision for those who drive under the influence of non-alcoholic drugs and refuse a blood test.

8. Appellant argues at some length that Officer Duffy improperly provided an expert opinion

without first being qualified as an expert. Appellant's Brief at 28–30. This claim goes to the admissibility of the evidence, not the sufficiency thereof. Our Supreme Court has repeatedly stated that sufficiency claims must be analyzed based on the entire record of evidence actually admitted. *Segida; Commonwealth v. Sanford,* 580 Pa. 604, 863 A.2d 428, 432 (2004). Moreover, Appellant waived his challenge to the admissibility of the officer's "expert" testimony by failing to object at trial. Pa.R.A.P. 302(a).

9. We recognize, as did the *Griffith* Court, that Appellant had no duty to explain himself or to disprove the inference of drug-induced impairment. Our analysis is not based on Appellant's failure to present a defense. Rather, the absence of another plausible explanation was a feature of the Commonwealth's own evidence.

pairment beyond a reasonable doubt.[10] We stress that "any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances." *Griffith.* Unlike *Griffith* and *Etchison,* this is not such a case. Accordingly, we affirm the judgment of sentence.

¶ 14 Judgment of sentence affirmed.

---

10. Appellant also argues in passing that the Commonwealth failed to discount the possibility that the presence of opiates in his bloodstream came from pain treatment at the hospital after his arrest. Appellant's Brief at 19. Because there was no evidence of Appellant's medical treatment in the hospital, any inference that Appellant may have received opiates in the hospital would be pure speculation. Moreover, we note that the urine test took place shortly after he was admitted to the hospital, at 7:56 a.m. on March 27, 2007. N.T., 4/2/09, at 55. Thus, it appears unlikely that hospital or ambulance personnel would have given Appellant opiates that then appeared in Appellants' urinalysis. In any event, Appellant's argument goes to the weight, rather than the sufficiency, of the evidence. Finally, we note that our Supreme Court rejected a similar argument in *Segida:* under 75 Pa.C.S.A. § 3802(a)(1), the Commonwealth has no duty to prove that the defendant did not ingest alcohol after the accident took place. *Segida,* 985 A.2d at 879 n. 6.