J-S14039-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TIMOTHY TERREN LAPIERRE | : | |
| | : | |
| Appellant | : | No. 1077 MDA 2023 |

Appeal from the Judgment of Sentence Entered March 27, 2023
In the Court of Common Pleas of Luzerne County Criminal Division at
No(s):  CP-40-CR-0002456-2022

BEFORE:  LAZARUS, P.J., PANELLA, P.J.E., and MURRAY, J.

MEMORANDUM BY MURRAY, J.:                    **FILED: MAY 24, 2024**

Timothy Terren LaPierre (Appellant) appeals from the judgment of sentence imposed following his non-jury conviction of driving under the influence (DUI) – controlled substances and driving on roadways laned for traffic.[1]  We affirm.

In its opinion, the trial court aptly summarized the facts underlying this appeal:

> The charges arose from events occurring on April 1, 2022. Trooper Gabriel Gigliotti, a state trooper with the Pennsylvania State Police (PSP)[,] testified on behalf of the Commonwealth. Trooper Gigliotti had been employed by the PSP as a trooper for two years.  Prior to that time, he was a liquor control enforcement officer with the PSP for four and a half years.  [Trooper Gigliotti] testified that he is trained to determine whether an individual is intoxicated or under the influence of a controlled substance.  He is certified in standardized field sobriety tests from the National

---

[1] 75 Pa.C.S.A. §§ 3802(d)(2), 3309(1).

Highway Transportation Safety Administration, and certified in Advanced Roadside Impaired Driving Enforcement (ARIDE) through the Pennsylvania DUI Association. [Trooper Gigliotti] testified that through his ARIDE training and his experience administering standard field sobriety tests, he is trained in indicators, including tremors, that the body does when it is under the influence of an intoxicating substance.

Trooper Gigliotti testified that on April 1, 2022, at about 11:00 p.m., he was on duty in a marked patrol car in full uniform. He testified that he was traveling on Carey Avenue toward Wilkes-Barre City when he saw a vehicle in the oncoming lane leave its lane of travel, enter the trooper's lane of traffic, and then return to the original lane. [**Trooper Gigliotti**] **said** [**Appellant's**] **vehicle crossed the center**[ ]**line of the road.** The trooper turned on his emergency lights, made a U-turn, and initiated a traffic stop. As he reached the rear driver's side of the vehicle, [Trooper Gigliotti] said he detected a strong odor of burnt marijuana emanating from the vehicle. He then made contact with [Appellant] at the driver's side window. Trooper Gigliotti identified [Appellant] as the driver of the vehicle. The trooper testified that … he noticed that [Appellant] had glassy, watery eyes and that [Appellant's] eyelids were "somewhat heavy." [Trooper Gigliotti] further testified that the appearance of [Appellant's] eyes is one of the indicators of use of an intoxicating substance, mainly cannabis. [Appellant] told the trooper that he had swerved to avoid a pothole, and he provided his license, registration, and proof of insurance. The trooper asked [Appellant] when he had last smoked marijuana[,] and [Appellant] replied that it had not been recently. [**Appellant**] **offered to submit to field testing and said he would allow the trooper to check his eyes**. In addition, [Appellant] offered consent to search his vehicle. The trooper said the weather was clear, the road was level, and [] the temperature on the night of the traffic stop was 50 or 60 degrees.

Trial Court Opinion and Order, 10/18/23, at 2-3 (emphasis added; citations to record omitted).

Trooper Gigliotti then administered field sobriety tests:

The trooper testified regarding [Appellant's] performance on the "walk and turn" test. [Trooper Gigliotti] said that, while

[Appellant] was instructed as to how to complete the test, he was asked to stand in a starting position with his right foot in front of his left on a straight line. He said [Appellant] did not stay in the starting position. During the walk and turn test itself, … [Appellant] missed heel-to-toe steps two through nine in the initial part of the test[,] and steps one through nine on the way back. The trooper said that at step three, [Appellant] stopped and looked at [the trooper] and asked if he wanted him to keep going. [Trooper Gigliotti replied that] the instructions indicate that once the test has begun, it is continued until completed.

[Appellant] was also asked to perform the one-leg stand test. The trooper explained that during the test, the subject is given a starting position in which to remain while the test is explained and demonstrated. [Trooper Gigliotti] said [Appellant] was asked to stand with his arms at his side and raise the foot of his choosing approximately six inches off the ground[,] with his eyes looking at his foot. He said the subject is then asked to count until the test administrator tells them to stop the test. He said [Appellant] raised his foot to the count of ten and again stopped and stared at the trooper. [Trooper Gigliotti] said at his count of twelve, [Appellant] then had to put that foot down. The trooper said [Appellant] became argumentative, stating that he was being taken advantage of. [Appellant] then continued [the] test, starting again at the number one. The trooper terminated the test at that point. Trooper Gigliotti said that while [Appellant] was performing the tests, … [Appellant] was experiencing body tremors, leg tremors, and eyelid tremors.[2]

Trooper Gigliotti testified that, based on his training and experience, he believed both that [Appellant] was under the influence of marijuana and that he was incapable of safely operating a vehicle on the night in question. [Appellant] was placed in custody…. Based on [Appellant's] prior consent to a search of his vehicle, [another trooper] ran his [police canine] around the vehicle[,] and [the dog] made a positive hit for a controlled substance on the vehicle. … Trooper Gigliotti indicated

_____

[2] Trooper Gigliotti also administered the horizontal gaze nystagmus, modified Romberg, and lack of convergence tests. Trial Court Opinion and Order, 10/18/23, at 3. Appellant objected to the admission of the results of these tests, and the trial court sustained the objections. *See id.*; *see also* N.T., 1/17/23, at 9-13.

- 3 -

there was no marijuana or drug paraphernalia found inside the vehicle.

Trooper Gigliotti then testified that he attempted to arrange chemical blood testing for [Appellant].  He said that [Appellant] was transported to Wilkes-Barre General Hospital and was read the DL-26B form and the **O'Connell**[3] warnings.  He said [Appellant] denied consent to a blood draw and also refused to sign the DL-26 form.

**Id.** at 3-5 (footnotes added).

The trial court further summarized the trial testimony:

Corporal Joseph Pericci [] testified on behalf of the Commonwealth.  Corporal Per[]icci testified that he has worked for the Pennsylvania State Police since 2004.  He was on duty on the night in question as a patrol supervisor at Troop P in Wilkes-Barre.  He said Trooper Gigliotti requested that he come to the scene of [Appellant's] traffic stop because [Appellant] "was being a bit unruly" and [Trooper Gigliotti] had requested a supervisor [respond to the scene].  [Corporal Pericci] testified that, prior to approaching [Appellant], he spoke with Trooper Gigliotti.  As the corporal approached [Appellant], who was seated alone in the back[ ]seat of the trooper's car, he smelled marijuana coming from the back[ ]seat.  [Corporal Pericci] spoke with [Appellant] for a short period of time.  [Corporal Pericci] testified that he approved of Trooper Gigliotti's decision to detain [Appellant].

[Appellant] testified on his own behalf.  He said he was turning onto Carey Avenue on the way to his sister's house on April 1st.  [Appellant] said that there was a "big portion" of potholes along the road.  He said because he drives a BMW 4 Series, which is low to the ground, he did his best to avoid the potholes and not violate any traffic laws.  [Appellant] said he doesn't remember actually crossing the [center] line because there were cars traveling in the opposite lane.  He said that he had been hanging out with two friends and had dropped them off at a bar less than a mile away because he was the designated driver.  [Appellant] said both of those friends had used

---

[3] **Commonwealth, Department of Transportation, Bureau of Traffic Safety v. O'Connell**, 555 A.2d 873 (Pa. 1989).

- 4 -

marijuana[,] and the smell may have been on his clothing. [Appellant] said he believed his eyes appeared glassy because Trooper Gigliotti was shining a flashlight in his eyes.

*Id.* at 5-6.

The Commonwealth charged Appellant with DUI – controlled substance, careless driving,[4] and driving on roadways laned for traffic. The case proceeded to a non-jury trial on January 17, 2023. The trial court found Appellant guilty of DUI – controlled substance and driving on roadways laned for traffic, and not guilty of careless driving. On March 27, 2023, the trial court sentenced Appellant to 72 hours to 6 months in jail, with immediate parole after serving the minimum sentence. The court also imposed fines.

On April 6, 2023, Appellant filed a motion for extension of time to file a post-sentence motion. On the same date, Appellant's counsel also filed a motion for appointment of conflict counsel. The trial court granted both motions. The court directed Appellant to file a post-sentence motion within 10 days after the appointment of conflict counsel. *See Commonwealth v. Moore*, 978 A.2d 988, 991 (Pa. Super. 2009) (explaining a trial court has authority to grant an extension of time for filing a post-sentence motion).

Appellant filed a post-sentence motion within the time specified by the trial court. The trial court denied Appellant's post-sentence motion on July

_____

[4] 75 Pa.C.S.A. § 3714(a).

19, 2023. This timely appeal followed. Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant raises the following issue for review:

Whether the Commonwealth failed to sustain its burden of proof by providing sufficient evidence of record that [Appellant] was guilty of [DUI] and driving on roadways l[a]ned for traffic?

Appellant's Brief at 1 (some capitalization modified).

Appellant challenges the sufficiency of the evidence supporting his convictions.

The standard we apply in reviewing the sufficiency of the evidence is whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact, while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Furness*, 153 A.3d 397, 401 (Pa. Super. 2016) (citation and brackets omitted).

We address each conviction separately. Regarding his DUI – controlled substance conviction, Appellant claims the Commonwealth did not establish

that his driving was impaired. Appellant's Brief at 5-6. Appellant emphasizes police did not find any physical evidence of drug use in his possession or in his vehicle. *Id.* at 5, 7.

Appellant was convicted of DUI – controlled substances under 75 Pa.C.S.A. § 3802(d)(2), which provides:

> **(d) Controlled substances.--**An individual may not drive, operate or be in actual physical control of the movement of a vehicle under any of the following circumstances:
>
> * * *
>
> (2) The individual is under the influence of a drug or combination of drugs to a degree which impairs the individual's ability to safely drive, operate or be in actual physical control of the movement of the vehicle.

75 Pa.C.S.A. § 3802(d)(2).

As this Court has explained,

> Section 3802(d) does not require that any amount or specific quantity of the drug be proven in order to successfully prosecute under that section. Rather, the Commonwealth must simply prove that, while driving or operating a vehicle, the accused was under the influence of a drug to a degree that impaired his or her ability to safely drive that vehicle.

*Commonwealth v. Hutchins*, 42 A.3d 302, 307 (Pa. Super. 2012) (citations and quotation marks omitted). "[I]mpairment evidence should be drawn from the totality of the factual circumstances." *Commonwealth v. Spence*, 290 A.3d 301, 309 (Pa. Super. 2023). Further, "[r]ather than insist on proof that may lie exclusively within Appellant's own bloodstream, which he refused to provide, we will instead turn to the totality of the Commonwealth's direct and

circumstantial evidence." ***Commonwealth v. DiPanfilo***, 993 A.2d 1262, 1268 (Pa. Super. 2010).

Instantly, the trial court addressed Appellant's claim as follows:

[Appellant] admitted through his own testimony that he was driving at the time of the traffic stop. Both Trooper Gigliotti and Corporal Pericci testified credibly regarding [Appellant's] driving under the influence of marijuana to a degree that impaired his ability to drive safely….

Before conducting the traffic stop, Trooper Gigliotti observed [Appellant's] car leave its lane of travel and enter the trooper's lane before returning to his own lane. Immediately upon approaching [Appellant's] vehicle, the trooper was able to detect a strong odor of marijuana coming from the car.

[Trooper Gigliotti] also testified that [Appellant] had glassy, watery eyes, and that his eyelids were somewhat heavy. The trooper, who is *trained and certified* to determine whether an individual is under the influence of a controlled substance, testified that the appearance of [Appellant's] eyes were one of the many indicators of use of an intoxicating substance, mainly cannabis. Further, the trooper testified that he noticed [Appellant] exhibited body tremors, leg tremors, and eyelid tremors. The trooper also asked [Appellant] to perform a variety of field sobriety tests. [Appellant] was not capable of properly executing the directions for either the walk and turn test or the one leg stand test[,] and [Trooper Gigliotti] said that the findings of the field tests were consistent with marijuana intoxication. Trooper Gigliotti testified that, based on his training and experience, he believed that [Appellant] was under the influence of marijuana and that [Appellant] was incapable of safely operating a vehicle.

In addition, Corporal Pericci testified that when he was called to the scene, [Appellant] was seated alone in the back[ ]seat of [Trooper Gigliotti's patrol] car. The corporal said that, as he approached the vehicle, he smelled the odor of marijuana. Although no marijuana was found after a search of the vehicle, when [another trooper] ran his dog around [Appellant's] car, the dog made a positive hit for a controlled substance on the vehicle.

- 8 -

Moreover, [Appellant] refused to allow for testing of his blood. Drivers in Pennsylvania are deemed to have given consent to chemical tests of breath or blood for the purpose of determining the alcoholic content of blood or the presence of a controlled substance if a police officer has reasonable grounds to believe the person has been driving a vehicle in violation of the DUI statute. 75 Pa.C.S.A. § 1547(a). The fact that a defendant refused to submit to chemical testing "may be introduced in evidence along with other testimony concerning the circumstances of the refusal" in a prosecution for DUI. 75 Pa.C.S.A. § 1547(e). … No presumptions shall arise from this evidence[,] but it may be considered along with other factors concerning the charge. [*Id.*]

Trial Court Opinion and Order, 10/18/23, at 8-9 (emphasis in original).

We discern no error or abuse of the trial court's discretion. The record confirms that Trooper Gigliotti is ARIDE-certified, and trained to determine whether an individual is under the influence of a controlled substance. N.T., 1/17/23, at 6. Trooper Gigliotti observed Appellant's vehicle leave its lane of travel and cross the center line; detected a strong odor of marijuana; and observed signs of intoxication in Appellant, including heavy eyelids and glassy eyes. *See id.* at 7-8; *see also id.* at 21 (Corporal Pericci confirming he smelled a strong odor of marijuana emanating from Appellant's person). Appellant also displayed signs of impairment, *i.e.*, eye and body tremors, while completing field sobriety tests. *See id.* at 9-11. The trial court found Trooper Gigliotti and Corporal Pericci credible. *See Furness*, 153 A.3d at 401 ("[T]he finder of fact, while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence."); *Commonwealth v. Andrulewicz*, 911 A.2d 162, 166 (Pa. Super. 2006) (stating "it is for the fact finder to make credibility determinations").

Our review confirms that the evidence, viewed in the light most favorable to the Commonwealth as the verdict winner, was sufficient for the trial court to determine Appellant operated a vehicle while under the influence of a controlled substance to a degree which impaired his ability to drive safely. Thus, this claim is without merit.

Regarding his summary conviction of driving on roadways laned for traffic, Appellant asserts "there was no evidence that designated traffic lines ever existed on that roadway or that Appellant was speeding or driving erratically." Appellant's Brief at 8. Appellant states that although he may have swerved to avoid a pothole, he did not leave his lane of travel. *Id.*

Section 3309 of the Vehicle Code provides, in relevant part:

Whenever any roadway has been divided into two or more clearly marked lanes for traffic the following rules in addition to all others not inconsistent therewith shall apply:

**(1) Driving within single lane.--**A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from the lane until the driver has first ascertained that the movement can be made with safety.

75 Pa.C.S.A. § 3309(1).

Here, Trooper Gigliotti testified that while he was on duty on April 1, 2023, he observed Appellant's "vehicle in the oncoming lane leave its lane of travel, enter my lane, then go back into their lane." N.T., 1/17/23, at 6; *see also id.* at 15 (confirming Appellant's vehicle crossed the center line); *id.* at 26 (Appellant describing the road as having "double lanes"). The trial court, acting within its province as the fact finder, credited Trooper Gigliotti's

testimony.  **See** Trial Court Opinion and Order, 10/18/23, at 10; **see also**

**Andrulewicz**, **supra**.  Moreover, contrary to Appellant's contention, Section

3309(a) does not specifically require a finding that a defendant was speeding

or otherwise driving erratically.  As the record supports the trial court's finding,

and we otherwise discern no abuse of the trial court's discretion, we conclude

Appellant's second sufficiency challenge lacks merit.

Judgment of sentence affirmed.


Judgment Entered.


Benjamin D. Kohler, Esq.
Prothonotary


Date: 5/24/2024