J-S35037-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JONATHAN SKOLNICK | : | |
| | : | |
| Appellant | : | No. 1661 MDA 2024 |

Appeal from the Judgment of Sentence Entered November 5, 2024
In the Court of Common Pleas of Cumberland County Criminal Division at
No(s):  CP-21-CR-0000539-2023

BEFORE:    OLSON, J., MURRAY, J., and LANE, J.

MEMORANDUM BY LANE, J.:                        **FILED DECEMBER 09, 2025**

Jonathan Skolnick ("Skolnick") appeals from the judgment of sentence imposed following his non-jury trial conviction of, *inter alia*, driving under the influence ("DUI") of a controlled substance-impaired ability.[1]  We affirm.

Following a vehicle stop, the Commonwealth charged Skolnick with DUI of a controlled substance and Vehicle Code[2] violations.  These charges proceeded to a non-jury trial.  The trial court summarized the evidence, which Skolnick does not dispute on appeal:[3]

> . . . On October 31, 2022 around 1:45 a.m., Pennsylvania State Police [Trooper] Christina Fow was on routine patrol . . . in West Pennsboro Township, Cumberland County with her partner,

---

[1] **See** 75 Pa.C.S.A. § 3802(d)(2).

[2] **See** 75 Pa.C.S.A. §§ 101-9805.

[3] For ease of discussion, we have amended the trial court opinion's references to "Defendant" to "Skolnick."

Trooper David Highhouse. [S]he observed a 2019 Dodge Ram with New Jersey registration fail to stop at a posted stop sign[.] The vehicle turned left onto Ritner Highway in front of the Troopers' patrol vehicle.

The Troopers activated their lights and sirens, and the vehicle made a "slow response" of about 60 seconds before coming to a complete stop. Trooper Fow testified that a delayed reaction time is something that she considers when evaluating whether a driver is under the influence.

Trooper Fow approached . . . the vehicle and made contact with the driver[, Skolnick,] the sole occupant[.] Trooper Fow noted that Skolnick "displayed some type of nervous behavior," and he had difficulty locating his license and registration documents. Eventually, Skolnick was able to supply Trooper Fow with his driver's license and registration, but not his proof of insurance.

[Trooper Fow] noticed the odor of marijuana coming from the vehicle. Trooper Fow asked Skolnick if he had a medical marijuana card. Skolnick gave her a [California] medical marijuana card . . . that had expired in March of 2022. Skolnick did not produce a valid medical marijuana card during the interaction.

Trooper Fow asked Skolnick to exit the vehicle and perform standard field sobriety tests . . . , to which he agreed. Instead of exiting the vehicle immediately, however, Skolnick took the time to place his cell phone, wallet and driver's license in his pockets, which she found to be unusual. In Trooper Fow's opinion, based on her training, knowledge, and experience, Skolnick performed poorly on the [tests], exhibiting 5 out of 8 clues on the walk-and-turn test, including pausing the test to perform some yoga-like stretches, and 2 out of 4 clues during the one-leg-stand test. Based on Skolnick's performance, Trooper Fow asked him to submit to a preliminary breath test . . . , to which Skolnick agreed. The test did not indicate the presence of alcohol.

. . . Trooper Fow conducted further testing under Advanced Roadside Impaired Driving Enforcement . . . protocols. She first administered the lack of convergence test, which showed that Skolnick was unable to converge his eyes, indicating that he could be under the influence of a controlled substance. Trooper Fow

next administered the modified Romberg balance test, which showed that his internal clock was off by 16 seconds. Skolnick also displayed eyelid tremors and a green tongue, which Trooper Fow knows to be indicative of recent marijuana use.

At that time, Trooper Fow believed Skolnick was impaired because of recent marijuana use and [was] incapable of safe driving, and she placed him under arrest. She transported Skolnick to [the hospital] for a blood draw. [S]he read Skolnick the [consent] form, after which Skolnick refused to submit to a blood test.

Trial Court Opinion, 5/6/25, at 1-4 (footnotes and record citations omitted).

At trial, the Commonwealth also presented a video recording of the incident, captured by the State Troopers' motor vehicle recorder. The trial court summarized that the video showed the following additional interactions:

. . . Trooper Highhouse deploys the vehicle's lights at 1 minute 27 seconds into the video, and then the siren at 1 minute 35 seconds. Skolnick engages his turn signal at 1 minute 37 seconds but continues to drive on the shoulder of the road until 2 minutes 25 seconds, when his vehicle comes to a complete stop. . . .

* * * *

. . . Trooper Fow asks Skolnick to step out of the vehicle to ensure he is "okay to drive." . . . Trooper Fow asks Skolnick if he has a weapon on him, to which he replies "I am a loving person." Skolnick then asks Trooper Highhouse to get his sweater from the vehicle. . . .

Skolnick continues to speak as Trooper Fow performs the horizontal gaze nystagmus test, during which he apologizes for calling her "Love" instead of "Trooper," and pontificates that "I just am in love. They say if your heart is open, you'll be able to receive love and give love." He then compliments Trooper Fow's "natural" fingernails. Trooper Fow asks Skolnick what he does for [a] living, to which he replies initially that he does construction, but then says "I do herbs" and [talks about that] in a three-minute, rambling monologue.

- 3 -

Trooper Fow then instructs Skolnick to walk toward the back of his vehicle to continue with the [field tests.] She asks Skolnick if he has any injuries to his back or legs, to which he responds that he broke his left toe and walks with a "gimp," though he does not appear to limp when he walks. Trooper Fow then instructs Skolnick on the walk-and-turn test. Skolnick has difficulty walking without swaying and maintaining his balance. He asks for confirmation twice on the instructions.

During the one-leg stand test, Skolnick asks Trooper Fow if he can do "some yoga" before beginning. She tells him he can "stretch," after which Skolnick . . . twist[s] his upper body and touch his toes. He has difficulty maintaining his balance during the test and counting accurately.

Skolnick [takes the breathalyzer test.] Trooper Fow then instructs Skolnick on the lack of [eye] convergence test, after which Skolnick asks if he can "do a little jog" because he is cold. After she replies "no" he asks her to repeat the instructions for the test. Skolnick laughed and displayed amusement at the sensation of his eyes crossing.

Trooper Fow then instructs Skolnick on the modified Romberg test, and Skolnick continues to interrupt her in amazement at the eye . . . lack of convergence test. He eventually tilts his head back to complete the modified Romberg test but stops . . . when he believes that Trooper Fow has left him. When she confirms that she is still there, Skolnick states "I was seeing Orion's belt before, and I was just picturing it, just now, right there." Skolnick explains that he counts fast because he counts quickly when he jogs, so his "30 seconds, to [hers] is probably 20." Trooper Fow then returns to her patrol vehicle. . . .

Trial Court Opinion, 5/6/25, at 4-8 (footnotes and record citations omitted).

At trial, Skolnick testified in his defense. The trial court reviewed his testimony in detail. First, Skolnick testified that on the night in question,

he did, in fact, stop at the stop sign at McAllister Church Road and Ritner Highway, but that he did "speed off fast afterwards." He did not know that the police were behind him. When he saw the lights, he thought that they wanted to speed up to pass him, so he slowed down. He stated that he did not feel safe stopping on

- 4 -

the shoulder because "there is not enough room on that road." Skolnick stated that he did not smoke marijuana at all that night, but he was tired after having driven 3 to 4 hours from New Jersey and helping his friend [whose] house had burned down.

Skolnick explained that he is anxious and talkative by nature, stating[:]

> I didn't go to school. I have a father. My mom was not really around. So I had to learn everything myself. So I don't know that I talk a lot. I am a little different. I learned that I am my own corporation at a certain time like ten or twelve years ago. I don't know. I am just different. They said that I was crazy, and in the hospital, they put me in a cuckoo house or whatever they said. I can't sit still. I don't have a kin [*sic*]. I like nature. I am not aware of a lot of programs, so I don't know. I am different. I talk sometime[s] a lot. I don't know.

[N.T., 7/10/24, at 42.]

Skolnick's attorney tried to redirect his testimony by asking a question regarding the walk and turn test, but Skolnick continued[:]

> I was supposed to be on medication. Afterwards, they said that I am bipolar. I don't know; they say a lot of things in the hospital field, so. I don't take any medications now. So I tried to tell her that I had surgery, and I tried to tell her I can't do things on my left side. So if I was wobbly or however I was, I don't walk as straight. If you see, I do walk with a gimp. My toe, it doesn't even go back like everybody else. I broke it when I was younger, and it just stayed there . . . [.] I had surgery on my whole left side. On my left toe, I had surgery. Somebody tried to kill me on my left side. Yeah, my whole left side is — but I do yoga now. So I am in fairly good shape, but I still have a limp. A natural limp.

[***Id***. at 43.]

Skolnick's attorney then asked him if there was anything else that hindered his ability to perform the [field tests,] to which Skolnick replied[:]

> If it was in the islands or if I had a good temperature, my body was shivering cold, and I don't know if you guys know, with the lights, rats eat themselves. It is scientifically proven; those white lights that you guys are shining, they affect the bugs and the homeostasis around you, and they do hurt the central nervous system. So that is why if you do look scientifically, people fight out of [nowhere] because those white lights affect the body, so she was blinging me at the same time. She was asking me to follow her instructions, if you ask me.

[*Id*. at 43-44.]

On cross-examination, the Commonwealth asked Skolnick why he submitted to the [breath test] but not to the blood draw, insinuating that Skolnick knew he would test negative for alcohol but positive for THC [*sic*]. Skolnick stated that he was fine with submitting breath, but would not give blood because he does not put needles into his body. On redirect, he explained[:]

> That is a direct insertion into my bio-timing health. And, also, I don't believe in anything. So, I feel the omnipotent, but to believe it to know something you don't know. I have a connection with a source. So that is how I feel, and my source tells me don't let anything enter the body because that is an outside agent. Especially to take my blood. There are people that steal blood all the time. I don't know if you guys know, but on the black market, it is harvest. So they will probably take my blood and take it somewhere else.

[*Id*. at 46-47.]

Trial Court Opinion, 5/6/25, at 4-8 (footnotes and some record citations omitted).

The trial court found Skolnick guilty of DUI of a controlled substance. The court commented: "In this particular instance, you were like super high. [N]ow you want me to believe that you're high on life." N.T., 7/10/24, at 49. Nevertheless, the trial court cited the Commonwealth's evidence of an odor of marijuana in Skolnick's car, his green tongue, and his refusal to submit to a blood test. Furthermore, the trial court found Skolnick guilty of operating a motor vehicle without required financial responsibility and failure to stop at a stop sign.[4]

On November 5, 2024, the trial court imposed a sentence of seventy-two hours to six months' imprisonment. Skolnick filed a timely *pro se* notice of appeal, and he and the trial court have complied with Pa.R.A.P. 1925.[5]

_____

[4] **See** 75 Pa.C.S.A. §§ 1786(f), 3323(b).

[5] Two days after sentencing, Skolnick, who had counsel, filed a *pro se* post-sentence motion. The docket entry for this motion notes that the trial court sent it to counsel; the court did not rule on it. **See Commonwealth v. Hopkins**, 228 A.3d 577, 580 (Pa. Super. 2020) (stating that "hybrid representation is not permitted in the Commonwealth, [and thus] our courts 'will not accept a *pro se* motion while an appellant is represented by counsel'"); **see also** Pa.R.Crim.P. 576(A)(4) (providing that if a represented criminal defendant submits for filing a written motion not been signed by his attorney, the clerk of courts shall, *inter alia*, accept it for filing, "make a docket entry reflecting the date of receipt," and forward a copy to counsel).

Skolnick then filed a *pro se* notice of appeal, which we accept as timely filed. **See Commonwealth v. Wooden**, 215 A.3d 997, 1000 (Pa. Super. 2019) (explaining that "although hybrid representation is not permitted, a notice of appeal protects a constitutional right and is distinguishable from other filings that require counsel to provide legal knowledge and strategy, and thus this Court is required to docket a *pro se* notice of appeal").
*(Footnote Continued Next Page)*

Skolnick presents one issue for our review: "Whether the evidence was insufficient to find . . . Skolnick guilty of 75 Pa.C.S.[A.] § 3802(d)(2)?" Skolnick's Brief at 6.

Skolnick challenges the sufficiency of the evidence showing that a controlled substance rendered him incapable of safe driving under the DUI of a controlled substance statute. We consider the applicable standard of review:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all of the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. [T]he entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and weight of the evidence produced, is free to believe all, part or none of the evidence.

---

Subsequently, Skolnick's counsel filed a motion for a **Grazier** hearing to determine whether Skolnick intended to proceed *pro se* or with counsel. **See Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1998). At the **Grazier** hearing, Skolnick requested the appointment of counsel, and the trial court granted it. Appointed counsel has filed a timely court-ordered Pa.R.A.P. 1925(b) statement of errors complained on appeal.

> Although the finder of fact may make reasonable inferences from the testimony presented, the "inferences must flow from facts and circumstances proven in the record, and must be of such volume and quality as to overcome the presumption of innocence and satisfy the [fact-finder] of an accused's guilt beyond a reasonable doubt." . . . Finally, "[b]ecause evidentiary sufficiency is a question of law, our standard of review is de novo and our scope of review is plenary."

***Commonwealth v. Spence***, 290 A.3d 301, 309 (Pa. Super. 2023) (citations omitted).

Section 3802(d)(2) of the Vehicle Code provides: "An individual may not drive, operate or be in actual physical control of the movement of a vehicle" if he "is under the influence of a drug or combination of drugs to a degree which impairs [his] ability to safely drive, operate or be in actual physical control of the movement of the vehicle." 75 Pa.C.S.A. § 3802(d)(2). For purposes of Section 3802, a defendant's refusal to submit to chemical testing "may be introduced in evidence along with other testimony concerning the circumstances of the refusal. No presumptions shall arise from this evidence but it may be considered along with other factors concerning the charge." 75 Pa.C.S.A. § 1547(e).

This Court has recently stated:

> "Section 3802(d)(2) does not require that any amount or specific quantity of the drug be proven in order to successfully prosecute under that section." Instead, the Commonwealth is required to prove that, while driving or operating a vehicle, the accused was under the influence of a drug to a degree that impaired his ability to safely drive that vehicle. . . . Additionally, we emphasize that Section 3802(d)(2) "does not limit, constrain, or specify the type of evidence that the Commonwealth can proffer to prove its case."

*Commonwealth v. Marberger*, 344 A.3d 403, ___ (Pa. Super. 2025) (citations omitted).

This Court has rejected an argument that, to show impairment by marijuana use for a Section 3802(d)(2) charge, the Commonwealth must always present "expert evidence linking the presence of" the controlled substance "to any impairment." *Commonwealth v. DiPanfilo*, 993 A.2d 1262, 1265, 1267 (Pa. Super. 2010). Instead, a trial court may consider "the totality of the Commonwealth's direct and circumstantial evidence," including the facts surrounding the underlying incident, any erratic driving, a police officer's observations of a defendant's appearance, movements, and speech, a defendant's refusal to submit to a blood test, and, for example, "a cloud of marijuana smoke" in a defendant's vehicle. *Id*. at 1267 n.5, 1268. A court may also consider the absence of alternative explanations for the cause of an accident and a defendant's behavior. *See id.* at 1268.

On appeal, Skolnick claims that the Commonwealth presented insufficient evidence to establish impairment by marijuana or any controlled substance. He acknowledges that a Section 3802(d)(2) conviction does not require an expert witness to establish impairment, but maintains it was necessary in this case. Skolnick argues that Trooper Fow was not qualified as an expert nor trained in Drug Recognition Enforcement. Relying on *DiPanfilo*, Skolnick contends that the trooper did not testify about: (1) "typical and obvious indicia of marijuana use," including bloodshot or glassy eyes, slurred

- 10 -

speech, or staggering; (2) "[being] met with a cloud of marijuana smoke upon approach;" or (3) observing any erratic driving," "such as [not] maintaining proper lane position, wide turns, almost striking a vehicle, speeding, [or] failing to use proper signals." Skolnick's Brief at 16-17.

Skolnick also points to Trooper Fow's concession that some of her observations were inconsistent with marijuana use: Skolnick's "unusually talkative" nature; his faster, not slower, internal clock; and his performance on the Romberg balance test. *Id*. at 20-21. Skolnick also contends that Trooper Fow could not say whether his test performances were within the margin of error or whether sleep deprivation, exhaustion, or medical conditions affected his performance. Finally, Skolnick cites other plausible explanations for the trooper's observations: it took him sixty seconds to find a non-residential, well-lit area to stop; legal substances, like candy, could have caused his green tongue; and he "is just an unusual gentleman" who merely acted within "his normal behavior." *Id*. at 19. He requests that this Court reverse his conviction.

In finding sufficient evidence to support Skolnick's DUI of a controlled substance conviction, the trial court reasoned:

> . . . Trooper Fow testified that Skolnick failed to stop at a stop sign and made a turn onto a roadway in front of her vehicle while traveling in the dark and late at night. Skolnick displayed delayed reaction time in coming to a complete stop on the shoulder of the roadway. Trooper Fow testified that she smelled the odor of marijuana emanating from Skolnick's vehicle[, and he] did not perform well on the field sobriety tests and had a green tongue.

> The video recording . . . showed that Skolnick was extremely talkative, had difficulty focusing on Trooper Fow's instructions and asked her to repeat herself, often interrupted her to go on a bizarre tangent, and generally did not take the interaction seriously. Skolnick was willing to submit to the preliminary breath test but not the blood draw, and we are permitted to infer from those facts that Skolnick knew that he had no alcohol in his breath, but that his blood would test positive for a controlled substance. Skolnick's explanation that he refused the blood draw because he does not allow any object to "enter his body," or that he was afraid that Trooper Fow would steal and sell his blood on the black market was not credible.

Trial Court Opinion, 5/6/25, at 13 (paragraph break added).

After review, we determine the trial evidence supported a finding that Skolnick was under the influence of marijuana to a degree that impaired his ability to safely drive. *See Spence*, 290 A.3d at 309; *see also* 75 Pa.C.S.A. § 3802(d). The trial court credited Trooper Fow's testimony as to her observations of: Skolnick's failure to stop at a stop sign and erratic movements once she activated her lights and siren; the smell of marijuana in his car; and his appearance, conduct, and performance of the field sobriety tests. On appeal, Skolnick: (1) argues this case lacks the presence of other, hypothetical indicia of DUI, such as bloodshot or glassy eyes, slurred speech, and "almost striking a vehicle;" (2) while minimalizing the factors that were present, by urging this Court to accept his explanations for, *inter alia*, his slow response to the troopers' sirens, unusual behavior, and green tongue. Skolnick's Brief at 16-18. We defer to the trial court's credibility determinations and weighing of the evidence, which included a video recording

- 12 -

and both Trooper Fow's and Skolnick's testimony. *See Spence*, 290 A.3d at 309.

Additionally, we note that in *DiPanfilo*, the decision relied upon by Skolnick, in reviewing "the totality of the . . . direct and circumstantial evidence," this Court emphasized the defendant's refusal to take a blood test. *See DiPanfilo*, 993 A.2d at 1267 (stating, "Finally, and most importantly, we cannot ignore the fact that *[the defendant] refused a blood test*") (emphasis in original). On appeal, however, Skolnick wholly ignores his refusal to submit to a blood test, and by extension the trial court's discussion of it. We reiterate that the court found not credible his explanation for the refusal — that "he does not allow any object to 'enter his body'" or that he feared the troopers would steal and sell his blood. Trial Court Opinion, 5/6/25, at 13. It was proper for the trial court to consider this evidence. *See* 75 Pa.C.S.A. § 1547(e).

Under the totality of the circumstances, we conclude that, even without expert testimony in this matter, the Commonwealth's evidence supported a finding that Skolnick was under the influence of marijuana to a degree that impaired his ability to drive safely. Accordingly, we affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/09/2025